**Donald Wayne STROUT, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 07–83–0281–CR.**

Court of Appeals of Texas,
Amarillo.

Feb. 22, 1985.

E. Dean Roper, Amarillo, for appellant.

Thomas Paige Brittain, Asst. Dist. Atty., Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

A jury convicted appellant Donald Wayne Strout of possession of a controlled substance, oxycodone, and assessed his punishment at a $3,000 fine and five (5) years confinement in the Texas Department of Corrections. However, the imposition of the prison sentence was suspended in favor of probation.

On appeal, appellant contends, in three grounds of error, that the trial court erred in denying his respective motions (1) to suppress evidence discovered and seized as a result of an illegal warrantless search, (2) for a mistrial when the deliberating jurors were exposed to the fact that he was simultaneously being tried for another offense in the same court, and (3) for a mistrial because of prejudicial jury argument when the prosecutor injected harmful suggestions of his prior misconduct not before the jury. Concluding that the grounds of error do not warrant reversal of the judgment, we affirm.

The controlled substance, oxycodone, the evidence vital to the State's case, was seized under the authority of a search warrant from a locked safety deposit box purchased by appellant under the name Supreme Jewelers. In presenting his first-ground contention that the seized oxycodone should have been suppressed, appellant admits that he does not complain of the sufficiency of the probable cause for the issuance of the search warrant; instead, he contends that an illegal warrantless search was conducted to obtain the probable cause itself upon which the search warrant was issued. A summary of the pertinent evidence will serve to position appellant's contention.

Acting upon information from two informants that appellant kept narcotics in safe-

ty deposit boxes of Stout Safe Storage located in a building in Amarillo, detective Edward Smith, sergeant Sams and officer David Abraham arrived at the building with a dog, Risky, trained to detect narcotics by smell. Displayed on the outside of the building was the business trademark "Stout Safe Storage, Total Privacy and Security." Access to the storage area was controlled by an electronically-opened inner door operated by a security guard. Tom Stout, manager of the storage facility, explained that the access is limited to customers, prospective customers and people with related business who come to speak to him.

The officers approached manager Stout and asked, "Does Donald Strout have a safe deposit box here?" Stout replied, "We do not have a box listed in Donald Strout's name." After further conversation during which the officers advised Stout that they knew appellant was doing business with the firm and was storing illegal drugs in the facility, the officers inquired of Stout, "Would you give us permission to enter the door with a dog?" Stout said he stated it would be all right, although detective Smith reported that Stout said, "You have got the dog."

Admitted by Stout to the facility of 1,126 deposit boxes, none of which was airtight, the officers, with Risky being handled by Abraham, walked around the perimeter three times. On each occasion, the dog Risky "alerted," *i.e.*, he became agitated to indicate his detection of the odor of narcotics, at a spot on the aisle below a group of boxes numbered 830, 829, 880 and 879; but, the dog was unable to isolate the particular box(es) from which the odor emanated. The officers, believing the dog was unable to pinpoint the box(es) due to the air conditioner and humidifier blowing, requested Stout, and he agreed, to turn off the air conditioner and humidifier that night and allow them to return in the morning.

The next morning, the officers, again having been informed that appellant had some narcotics in the boxes, returned to the building with the dog Risky. Following the procedure used the previous day, officer Abraham led Risky through the vault area three times, and on each occasion Risky "alerted" to the group of boxes numbered 830, 829, 880 and 879. When asked, manager Stout said that he had seen appellant in those boxes. Stout volunteered that box number 830 was empty, and he opened it with a key to show the officers that it was empty. Stout, who does not keep a duplicate key to the boxes that are rented or purchased, was informed that a search warrant would be secured.

Later that day, officers came to the building with a locksmith and a search warrant. The locksmith drilled the boxes numbered 829, 880 and 879. In one of the boxes was found the oxycodone which is the subject of this prosecution.

The crux of appellant's initial contention is that because a storage locker is entitled to Fourth Amendment protection, *Kolb v. State*, 532 S.W.2d 87 (Tex.Cr.App.1976), and he had an expectation to the total privacy represented by the management of Stout Safe Storage, the detection of the controlled substance by the canine Risky in the secured place not open to the public constituted an illegal search. The contention appears to be a novel one in Texas law; but, when considered in the light of the actual underlying facts and the controlling authority on the subject, the contention must fail, for it becomes obvious that there was no search within the meaning of the Fourth Amendment.

The Fourth Amendment protects people, not "areas," against unreasonable searches and seizures, *Katz v. United States*, 389 U.S. 347, 353, 88 S.Ct. 507, 512, 19 L.Ed.2d 576 (1967), and the protection extends to and safeguards the person's legitimate expectations of privacy. *United States v. Chadwick*, 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977). It follows that, except in a few specifically and well-delineated instances, an individual's private interest in a closed locker may not be invaded through a search of the locker by officers without a warrant issued upon probable cause. *Kolb v. State, supra*, at

88–89. It also follows that there is no prohibited intrusion into a person's legitimate expectation of privacy, and thus no search within the meaning of the Fourth Amendment, by a canine sniffing a person's luggage in a public place, *United States v. Place,* 462 U.S. 696, 707–708, 103 S.Ct. 2637, 2645, 77 L.Ed.2d 110, 121 (1983), or sniffing in the areaway outside a locker in a semi-public place, *United States v. Venema,* 563 F.2d 1003, 1006 (10th Cir. 1977); *State v. Quatsling,* 24 Ariz.App. 105, 536 P.2d 226, 228–29 (1975), *cert. denied,* 424 U.S. 945, 96 S.Ct. 1416, 47 L.Ed.2d 352 (1976), for the canine's sniffing around the locker is not an unconstitutional invasion of the locker itself. *United States v. Fulero,* 162 U.S.App.D.C. 206, 498 F.2d 748, 749 (1974).

▪ Although appellant argues that he had an expectation of the total privacy represented by the management, the expectation could not legitimately extend further than the privacy of the boxes themselves, for he neither rented nor purchased the aisle or areaway in front of the boxes. The areaway outside the boxes was, according to the testimony of manager Stout, open to the firm's customers and prospective customers and to other persons admitted by Stout, and, therefore, was at least semi-public in nature. Stout consented to the admission of, and admitted, the officers and Risky to the areaway and aisle in front of appellant's boxes from which, without a physical invasion of the boxes themselves, Risky detected the odor of the controlled substance(s) emanating from appellant's box(es).

On these facts, we conclude, in harmony with the conclusions of the *Venema* and *Ouatsling* courts in analogous factual situations, that Risky's sniffing in the aisle in front of appellant's safety deposit boxes did not constitute a search within the meaning of the Fourth Amendment, since appellant did not have a legitimate expectation of privacy in the aisle in front of his boxes. The first ground of error is overruled.

While the jury was deliberating on appellant's guilt or innocence in the jury room, another jury was being selected in the courtroom from a panel of veniremen for the trial of appellant on another criminal indictment. When the deliberating jurors noted their dispute about the testimony of one witness, the panel of veniremen was removed from the courtroom, the jury was returned to the courtroom to hear the testimony read and then was retired to continue its deliberations, and the panel of veniremen was recalled to the courtroom. During these activities, appellant remained seated at the counsel table.

Upon the happening of these events, appellant moved for, but the court denied, a mistrial on the ground the jurors were exposed to the fact that he was on trial for another offense in the same court. The court's denial of the mistrial motion is the basis of appellant's second ground of error.

▪ Appellant's argument is, in essence, that the events constructively placed the jury on notice that he was on trial for another criminal offense, which constituted inadmissible evidence of prior criminal conduct. However, other than the happenings themselves, there is no evidence of what notice the jurors took of appellant's presence in the courtroom, where he should have been, *see* Tex.Code Crim.Pro.Ann. art. 33.03 (Vernon Pamp.Supp. 1966–1985), when they returned to hear the testimony read. At most, then, the events merely raised a fact issue whether the jury actually received inadmissible evidence harmful to appellant, and it is not shown that the trial court abused its discretion in resolving the issue against appellant. *Honeycutt v. State,* 157 Tex.Cr.R. 206, 248 S.W.2d 124, 125 (1952).

▪ Beyond that, if the jury actually noticed that appellant was on trial for another offense, the notice was invited by him when his counsel, in his argument to the jury, referred to other drugs seized from appellant's safety deposit boxes and stated, "We are not on trial for that, that is another jury, another day." It is axiomatic that appellant cannot inject inadmissible evidence into the case and then urge its re-

ceipt as a ground for reversal. *Thompson v. State*, 652 S.W.2d 770, 773 (Tex.Cr.App. 1981). The second ground is overruled.

 In making the State's argument to the jury during the punishment phase of the trial, the prosecutor stated:

> You know, Mr. Roper [appellant's counsel] said he [appellant] had never been in any kind of trouble before, and you know that's not the truth. The testimony is he has never been convicted in this State or any other State or in the United States.

Appellant's objection to the argument was sustained, and the court admonished the jury in the following language:

> Members of the jury, you are not to consider the statement made by Mr. Hamilton [the prosecutor], I don't know the exact wording, the only evidence you have is he has been—not been convicted of a felony, never been in any trouble, I'm not sure just what he did say, but you heard the evidence, and the only evidence in the case for your consideration is that that you heard from this witness stand and that is all you are to consider for any purpose, so don't consider what Mr. Hamilton says, because that is not evidence and that is not evidence in this case.

Appellant then moved for a mistrial, which the court denied. The denial was error, appellant charges in his third ground of error, because the instruction given by the court was not specific or sufficient to cure the prejudicial argument.

Viewed in proper context of the arguments, the prosecutor's statements did not, as appellant urges, impermissibly inject unsworn testimony or strike at him over his counsel's shoulders by suggesting that counsel was lying to the jury; rather, the statements voiced the prosecutor's appraisal of the accurate state of the evidence, a deduction he was entitled to draw. *Denison v. State*, 651 S.W.2d 754, 761–62 (Tex. Cr.App.1983). But in any event, if it can reasonably be said that the argument improperly suggested the existence of other evidence detrimental to appellant, the error

was of the type that was cured by the instruction given. *Anderson v. State*, 633 S.W.2d 851, 855 (Tex.Cr.App.1982). The third ground is overruled.

The judgment is affirmed.