Kenneth Reed SMITH, Appellant,

v.

The STATE of Texas, State.

No. 2–91–240–CR.

Court of Appeals of Texas,
Fort Worth.

Nov. 25, 1992.

Discretionary Review Refused
March 3, 1993.

Michael Logan Ware, William H. "Bill" Ray, Fort Worth, for appellant.

Tim Curry, Dist. Atty., Susan Ayres, Michael Parrish, and Sylvia Mandel, Assts., Fort Worth, for ·appellee.

Before FARRIS, MEYERS and DAY, JJ.

## OPINION

DAY, Justice.

Kenneth Reed Smith (Smith) appeals his conviction of aggravated sexual assault pursuant to TEX.PENAL CODE ANN. § 22.-021(a)(1)(B)(i), (2)(A)(iv), & (b) (Vernon 1989). The jury assessed punishment, enhanced by a prior felony conviction, at fifty-five years imprisonment in the Texas Department of Criminal Justice, Institutional Division, and a $10,000 fine.

We affirm.

The sufficiency of the evidence is not at issue in this appeal, and so we will limit our discussion of the facts to those addressed in each point of error.

In his first two points of error, Smith complains that the trial court improperly denied his special plea of double jeopardy in violation of the United States and Texas Constitutions. In his remaining point of error, Smith complains that the trial court improperly overruled defense counsel's objection to the State's jury argument at the guilt/innocence phase of trial.

Prior to trial, Smith was convicted of capital murder in an unconnected case.[1] At the punishment phase of the capital murder trial, in conjunction with special issue number two regarding Smith's future dangerousness, the State introduced evidence of the unadjudicated sexual assault of R.F., the complainant in this case. The jury answered "no" to special issue number two. Thereafter Smith was indicted and tried for the aggravated sexual assault of R.F. Before trial Smith moved, unsuccessfully, to dismiss the case on double jeopardy grounds under both the federal and state constitutions.

██ In his first point of error, Smith complains that the trial court erroneously denied his double jeopardy plea, thus violating his right to be free from double jeopardy under the Fifth and Fourteenth Amendments to the United States Constitution. The double jeopardy clause[2] "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Grady v. Corbin*, 495 U.S. 508, 515, 110 S.Ct. 2084, 2090, 109 L.Ed.2d 548 (1990).

Smith asserts that he was prosecuted, and thus placed in jeopardy, for the sexual assault of R.F. at the capital punishment phase of the capital murder trial and then retried for that identical conduct in the present case. Smith further contends that the jury's "no" answer to special issue number two in the capital murder case precludes the State from prosecuting Smith for sexually assaulting R.F.[3] These arguments are without merit.

---

1. Cause No. 0385002D, State v. Kenneth Reed Smith, Criminal District Court No. 3, Tarrant County, Texas.

2. The Fifth Amendment to the United States Constitution provides:
 [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb.
 The Fifth Amendment prohibition against double jeopardy is fully applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 787, 89 S.Ct. 2056, 2062,

23 L.Ed.2d 707 (1969); *Stephens v. State*, 806 S.W.2d 812, 815 (Tex.Crim.App.1990), *cert. denied*, —— U.S. ——, 112 S.Ct. 350, 116 L.Ed.2d 289 (1991).

3. *Smith seems to argue that, because evidence of his sexual assault of R.F. was presented at the punishment phase of the capital murder trial and because the jurors determined that Smith presented no threat of future dangerousness to society, they thereby found him not guilty of assaulting R.F. At the very least, Smith appears to argue that his "prosecution" (at the capital*

Smith mistakenly relies on *Grady* as authority for his position. In that case the United States Supreme Court ruled that "the Double Jeopardy Clause bars any subsequent prosecution in which the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, 495 U.S. at 521, 110 S.Ct. at 2093, 109 L.Ed.2d at 564. The Court went on to state, however, that "[t]he critical inquiry is what *conduct* the State will prove, not the evidence the State will use to prove that conduct.... [T]he presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding." 495 U.S. at 521–22, 110 S.Ct. at 2093, 109 L.Ed.2d at 564 (citing *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)) (emphasis added).

In the recent case of *United States v. Felix*, —— U.S. ——, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992), the Supreme Court held that the double jeopardy clause does not bar the government from prosecuting a defendant for substantive crimes that were used as evidence against the defendant in a prior trial. *Felix*, —— U.S. at ——, 112 S.Ct. at 1381.

In *Felix* the defendant was first prosecuted in Missouri for attempting to manufacture methamphetamine. At trial, Felix claimed that he never had criminal intent but had acted under the belief that he was participating in a covert DEA operation. In order to establish Felix's criminal intent, the government put on evidence that Felix had previously manufactured methamphetamine in Oklahoma. Felix was convicted at the Missouri trial, and the Eighth Circuit affirmed. *Id.* at ——, 112 S.Ct. at 1380–81.

Thereafter, the government indicted Felix in Oklahoma, charging him with seven substantive counts involving the manufacture and possession of methamphetamine. At trial, the government introduced much of the same evidence that had been prof-

fered in the Missouri trial. The jury convicted Felix on all counts. *Id.* Felix argued on appeal that the double jeopardy clause barred most of the Oklahoma charges, but the United States Supreme Court held otherwise. The Court noted:

> The actual crimes charged in each case were different in both time and place; there was absolutely no common conduct linking the alleged offenses. In short, none of the offenses for which Felix was prosecuted in the Oklahoma indictment is in any sense the "same offense" as the offense for which he was prosecuted in Missouri.

*Id.* at ——, 112 S.Ct. at 1382. Although the Tenth Circuit had found it decisive that the government had introduced *evidence* of Felix's drug manufacturing in Oklahoma to show criminal intent at the Missouri trial, the Supreme Court found it "clear that, no matter how much evidence of the Oklahoma transactions was introduced by the Government to help show Felix' state of mind, he was not *prosecuted* in the Missouri trial for any offense other than the Missouri attempt offense with which he was charged." *Id.* (emphasis in original). Additionally, the Court stated that "a mere overlap in proof between two prosecutions does not establish a double jeopardy violation." *Id.*

The situation presented in *Felix* is similar to the instant case. First, Smith was prosecuted for capital murder. At the punishment phase of that trial, evidence was introduced of Smith's alleged sexual assault of R.F. The jury reached a decision, ostensibly based at least in part on that evidence. The State then indicted and tried Smith for the sexual assault of R.F., and the jury found Smith guilty as charged.

The actual crimes charged in the capital murder case and the R.F. case were different in both time and place, however, and no common conduct linked the alleged offenses. Even though there is some overlap in evidence between the two cases, Smith was not in any way *prosecuted* in the case at bar for the same offense for which he

murder trial) for the sexual assault offense terminated without either conviction or acquittal,

thus barring the State from prosecuting Smith for the assault.

was prosecuted in the capital murder case. *See Felix,* —— U.S. at ——, 112 S.Ct. at 1383 (introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct); *Lester v. State,* 824 S.W.2d 775, 778 (Tex.App.—Houston [14th Dist.] 1992, no pet.) (double jeopardy is no more violated by using an *unadjudicated* offense as evidence of defendant's character to assess punishment than when a court considers *prior* criminal activity to arrive at a proper sentence).[4]

Smith also points us to *Ex parte Sewell,* 742 S.W.2d 393 (Tex.Crim.App.1987) as support for his position. In that case the Court of Criminal Appeals ruled that the federal and state double jeopardy clauses bar the State from attempting to have the defendant declared a habitual offender at the retrial of a primary offense if the evidence regarding the enhancement allegations was insufficient at the initial trial. *Id.* at 395. *See also Taylor v. State,* 755 S.W.2d 548, 552 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

*Sewell* is not in point here, however. At Smith's capital murder trial the State did not seek to prove that Smith sexually assaulted R.F., and the jury made no specific finding that Smith did not assault R.F. Rather, the State sought to prove Smith's future dangerousness based on evidence of his alleged sexual assault of R.F. Thus, while the State would be collaterally estopped from relitigating the issue of Smith's *future dangerousness* in a capital murder case based on evidence of the sexual assault against R.F., the State was free to prosecute Smith for the sexual assault

itself. *See State v. Nash,* 817 S.W.2d 837, 840–42 (Tex.App.—Amarillo 1991, pet. ref'd) ("guilt or innocence is not at issue in a probation revocation hearing … double jeopardy protections do not apply to a proceeding wherein the result is deemed to be neither a conviction nor acquittal"; collateral estoppel does not preclude litigation of offense used to revoke probation). *Id.* at 840.

Finally, Smith's reliance on two Arizona cases is unfounded because both of those cases are clearly distinguishable from the matter before us. Both *Mullet v. Miller,* 168 Ariz. 594, 816 P.2d 251 (1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1245, 117 L.Ed.2d 477 (1992) and *State v. Mojarro,* 169 Ariz. 1, 816 P.2d 260 (1991) involved situations in which the defendant-appellants had previously been punished in some way for the identical conduct for which they were later tried in criminal proceedings.[5] Smith, on the other hand, had not been previously punished for his sexual assault of R.F. Use of an unadjudicated offense during the punishment phase of a capital murder trial does not implicate the double jeopardy clause because the defendant is not actually punished for the unadjudicated offense. Rather, the previous criminal conduct only justifies heavier punishment for the offense for which the defendant has just been convicted. *See Sekou v. Blackburn,* 796 F.2d 108, 112 (5th Cir.1986); *United States v. Bowdach,* 561 F.2d 1160, 1175 (5th Cir.1977).

We find that the State's use of evidence of Smith's unadjudicated sexual assault of R.F. at the punishment phase of Smith's capital murder trial did not place Smith in

---

**4.** Smith urges that *Lester* was wrongly decided. In light of *Felix,* however, we are compelled to disagree. Smith also contends that *Lester* is distinguishable from the instant case because evidence of the offense before the *Lester* court had been admitted at the punishment phase of a noncapital case and because *Lester* does not indicate that the sentences ran consecutively rather than concurrently. We find these arguments unpersuasive. There is no reason why a convicted criminal should not have all of his criminal activity placed before a court or jury in order that a proper punishment can be assessed for the crime of which he stands convicted. *See Lester,* 824 S.W.2d at 779.

**5.** The issue before the court in *Mullet* was whether a fine imposed in an administrative proceeding barred subsequent criminal prosecution for the *same conduct.* The *Mullet* court found that the imposition of a purely punitive administrative penalty served as a double jeopardy bar. 168 Ariz. at 597–98, 816 P.2d at 254–55. Likewise, the court in *Mojarro* was called upon to determine whether a finding of criminal contempt and six months jail time for refusing to provide a deposition barred subsequent criminal prosecution for the *same conduct.* 168 Ariz. at 604, 816 P.2d at 261.

jeopardy for the assault. Therefore, the double jeopardy clause of the United States Constitution did not bar the State from later prosecuting Smith for sexually assaulting R.F. Smith's first point of error is overruled.

In his second point of error, Smith raises the same double jeopardy arguments under the Texas Constitution that he raised under the United States Constitution. Thus, Smith infers that he has greater rights against double jeopardy under our state constitution [6] than under the federal constitution.

The Court of Criminal Appeals has recently indicated that the federal and state prohibitions against double jeopardy are identical conceptually. *See Phillips v. State,* 787 S.W.2d 391, 393 n. 2 (Tex.Crim. App.1990). Smith relies on that court's later decision in *Heitman v. State,* 815 S.W.2d 681, 682 (Tex.Crim.App.1991), however, to support his position. The *Heitman* court declined to "blindly follow" Supreme Court decisions interpreting searches and seizures under the Fourth Amendment when analyzing the same issue under article I, section 9 of the Texas Constitution. *Id.* at 690. Although Supreme Court decisions represent the minimum protections that a state must afford its citizens, states may also provide individuals additional rights. *Id.* Smith would have us apply the reasoning in *Heitman* to the double jeopardy protections of article I, section 14 of the Texas Constitution and the Fifth Amendment. Because case law does not suggest such an analysis, we will not hold as Smith urges. *See Stephens,* 806 S.W.2d at 814–15; *Phillips,* 787 S.W.2d at 393; *Sorola v. State,* 769 S.W.2d 920, 924 (Tex.Crim.App.), *cert. denied,* 493 U.S. 1005, 110 S.Ct. 569, 107 L.Ed.2d 563 (1989) (in each of these cases, the Court of Criminal Appeals looked to Supreme Court decisions when interpreting the double jeopardy protection of the Texas Constitution).

We acknowledge that "our state constitution is a doctrine independent of the federal constitution and its guarantees are not dependent upon those in the federal constitution." *Heitman,* 815 S.W.2d at 688. Nonetheless, at least one Texas court, in analyzing both the federal and state constitutions, has held that double jeopardy rights are not violated when evidence of an unadjudicated offense is presented at the punishment stage of one trial and the defendant is then prosecuted at a later trial for the unadjudicated offense. *See Lester,* 824 S.W.2d at 778. The fact that a defendant has his unadjudicated criminal activity considered by a jury in assessing punishment for an entirely different offense does not equate to a trial, conviction, or punishment for the unadjudicated offense. *See id.* Moreover, the fact that *Felix,* —— U.S. at ——, 112 S.Ct. 1377, is in line with *Lester* lends credence to *Lester* and gives support to this court's decision to follow it, despite Smith's urging to the contrary. Furthermore, in light of *Lester,* we are not blindly following the Supreme Court's decisions interpreting the Fifth Amendment if we also adopt the reasoning in *Felix. See Heitman,* 815 S.W.2d at 690.

Because we find that the double jeopardy protections of our state constitution were not violated when Smith was prosecuted for sexually assaulting R.F., we overrule Smith's second point of error.

■ In his remaining point of error, Smith complains that the trial court improperly overruled defense counsel's objection to the prosecution's jury argument at the guilt/innocence phase of trial. Smith attacks the following argument:

MR. PARRISH [PROSECUTOR]: I want you to judge for yourself. Is [R.F.] being truthful? Is she telling the same story that she told on August the 21st of 1989 to the plainclothes officer she discussed, only two days after this offense?

This statement is absolutely, completely consistent. *She has told you nothing*

---

**6.** Article I, section 14 of the Texas Constitution provides:

No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction.

*but the truth from the very first moment* she talked to her mother, when she talked to Dr. Veronica Greer. She told this detective and she has told you here in Kerrville, Texas.

And if you doubt any of that, take a look at the very last of [R.F.'s statement to the police]; and when I say that, I[,] I, in no way, mean to think that you folks might have doubted [R.F.]. I don't think you could. I think you saw her on the stand. I think you saw how she said what she said, why she said it, and the great sacrifice. She came in here and told you about this.

*[R.F.] has told the truth from the very beginning and it is the truth—* [Emphasis added.]

MR. WARE [DEFENSE COUNSEL]: Your Honor, I'm going to object to the prosecutor interjecting his own opinion in this case.

THE COURT: Overruled.

Smith contends that the second italicized statement was impermissible because the prosecutor was giving his personal opinion that the State's key witness had told the truth. After the court overruled defense counsel's objection, the prosecutor finished his argument.

MR. PARRISH: At the very end of [R.F.'s statement]....

"I told him that I was still going to tell it. I went up to close the door and his girlfriend Tonya walked in. That's when he left. I then ran upstairs to tell his sister, Mary Smith."

Do you remember when they were cross-examining R.F. up here and they acted like it was a big deal because she did not mention that Tonya, the girlfriend, walked in at the last minute, that you didn't hear that ...? It's here in [R.F.'s] statement. It's in the statement she told nearly two years ago, 23 months ago. That little girl had nothing to hide from you, folks, and *[did] not mislead you in any way.*

She may not have said threw the knife; she may have said slid the knife. But I submit to you, what happens when you throw a knife across the floor? Doesn't it then fall?

Please ask for [R.F.'s statement] and read it. After you do, I don't think you will have any doubt that R.F. established each and every element that you need to find that man guilty of aggravated sexual assault.

. . . .

Folks, the evidence here is overwhelming. *It's truthful, it's believable.* [Emphasis added.]

 Initially, we find that Smith has failed to properly preserve error because he did not object to the prosecutor's argument at the earliest opportunity. As the earlier portion of the jury argument indicates, the prosecutor made two nearly identical statements several sentences apart. Defense counsel failed to object to the first statement. Thus, his objection to the second statement did not satisfy the timeliness requirement of TEX.R.APP.P. 52(a). In order to be considered timely, an objection must be made as soon as the ground for the objection becomes apparent, *i.e.,* as soon as the defense knows or should know that an error has occurred. *Hollins v. State,* 805 S.W.2d 475, 476 (Tex.Crim.App. 1991).

 Moreover, even if the trial court had committed error, it was cured because the prosecutor argued without objection, *both before and after* the contested portion of the argument, that R.F.'s testimony was truthful. *See Nathan v. State,* 788 S.W.2d 942, 945 (Tex.App.—Fort Worth 1990, no pet.) (error is cured when the same evidence or argument has been previously permitted without objection). *See also Anderson v. State,* 717 S.W.2d 622, 628 (Tex.Crim.App.1986) (inadmissible evidence rendered harmless by admission of other evidence that proves same fact inadmissible evidence sought to prove); *Macias v. State,* 776 S.W.2d 255, 259 (Tex.App.—San Antonio 1989, pet. ref'd) (subsequent admission of same evidence renders admission of inadmissible evidence harmless, and nothing is presented for review).

 We also conclude that the prosecutor's jury argument was proper. To be

proper, jury argument must fall within one of four areas: (1) summation of the evidence presented at trial; (2) reasonable deduction drawn from the evidence; (3) answer to opposing counsel's argument; or (4) plea for law enforcement. *Albiar v. State*, 739 S.W.2d 360, 362 (Tex.Crim.App. 1987). In examining challenges to jury argument we are to consider the remark in the context in which it appears. *Denison v. State*, 651 S.W.2d 754, 761 (Tex.Crim. App.1983). Counsel are allowed wide latitude without limitation in drawing inferences from the evidence so long as the inferences drawn are reasonable, fair, legitimate, and offered in good faith. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim.App. 1988). To constitute reversible error, jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence. *Id.*

In light of the entire portion of the jury argument set out above, we conclude that the prosecutor's allusions to R.F.'s truthfulness were not mere personal opinion. Defense counsel had attempted to impeach R.F.'s testimony by showing that it was inconsistent. The alleged inconsistencies were as follows: (1) R.F. testified on direct examination that Smith slid the knife across the floor. On cross-examination, defense counsel introduced into evidence the statement R.F. had given police in which R.F. stated that Smith threw the knife. R.F. then testified that the statement was correct. (2) On direct examination, R.F. testified that she got up and put her clothes on after the assault. In her statement to the police, R.F. said that Smith

pulled R.F.'s clothes back up. (3) R.F. did not mention Smith's girlfriend on direct examination. On cross-examination, however, R.F. testified that Smith's girlfriend walked in after the rape. The statement R.F. gave to the police also mentioned Smith's girlfriend.

Most of the prosecutor's closing argument was dedicated to minimizing these alleged inconsistencies and to demonstrating that they did not exist. In *Vasek v. State*, 163 Tex.Crim. 632, 294 S.W.2d 810, 811 (1956), the Court of Criminal Appeals ruled that the State's argument that its witness was an honest man was not an attempt to bolster the witness's testimony. Rather, the court took that statement as an impression that the prosecutor drew from the witness's answers before the jury. *Id.* We believe *Vasek* is applicable to the case before us. The trial judge could reasonably have found that the prosecutor arrived at the conclusion regarding R.F.'s truthfulness from her answers before the jury. As such, the argument was a reasonable deduction from the evidence and a summation of that evidence, rather than personal opinion.[7]

Because Smith failed to preserve error and because the prosecutor's jury argument was proper, we overrule Smith's third point of error.

The judgment of the trial court is affirmed.

---

7. Smith relies primarily on *Menefee v. State*, 614 S.W.2d 167 (Tex.Crim.App.1981) as support for his position that the State's argument was improper. As at Smith's trial, the credibility of the State's witness in *Menefee* was critical to the State's case because the witness was the only person who could identify the defendant as the person who committed the offense. The prosecutor argued: "And Virse, *I don't believe I have ever seen* anybody that I thought was any more honest than she is." The *Menefee* court found that this argument injected the prosecutor's personal opinion of the witness's credibility and was not a deduction from the evidence. *Id.* at 168 (emphasis added). *Menefee* is distinguishable from Smith's case, however, because the

State's jury argument in *Menefee* was readily identifiable as the prosecutor's personal opinion. Conversely, the prosecutor's argument at Smith's trial included no words like "I believe" or "in my opinion."

Smith also directs us to *Puckett v. State*, 168 Tex.Crim. 615, 330 S.W.2d 465 (1959) and *Brown v. State*, 165 Tex.Crim. 535, 309 S.W.2d 452 (1958). In each of those cases the arresting officers, alone, testified for the State. Additionally, *and in stark contrast to the instant case,* the appellants and other witnesses gave testimony that directly contradicted the officers' testimony. Notably, neither Smith nor any other defense witness presented any *evidence that contradicted R.F.'s testimony.*