THOMPSON 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-103-CR





MICHAEL THOMPSON,




 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE 



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT



NO. 0925508, HONORABLE JON N. WISSER, JUDGE PRESIDING



 




 Michael Thompson was convicted of aggravated sexual assault and aggravated
robbery, both with a deadly weapon. Tex. Penal Code Ann. § 22.021 (West 1989), § 29.03
(West Supp. 1994). On appeal, Thompson argues: (1) the trial court erroneously excluded
reputation evidence of the victim's past sexual behavior; (2) the State repeatedly referred to
appellant's incarceration, violating his right to a fair and impartial trial; (3) the State made
improper jury argument; and (4) appellant received ineffective assistance of counsel. We will
affirm. 



DISCUSSION AND HOLDING


 In his first point of error, Thompson argues that the trial court erred in refusing
to admit defense evidence that the victim had a reputation for trading sex for drugs. Thompson concedes that reputation evidence of the past sexual behavior of an alleged victim of aggravated
sexual assault is not admissible under the Texas Rape Shield Law. See Tex. R. Crim. Evid. 412. (1) 
However, Thompson asserts that the victim's testimony opened the door to this evidence, relying
on the rule of optional completeness. See Tex. R. Crim. Evid. 107. 

 The victim testified that she was walking through an alley to reach East 12th street,
when she saw Thompson standing on the porch of a vacant house. He asked her for a light, and
the victim walked up to him and offered him one. She testified, "He took the light and we both
went in--he had me by my wrists and we both went inside the house." Thompson told her he had
some drugs and at some point pulled out a knife. The victim testified that Thompson pulled the
knife about fifteen to twenty-five minutes after they were in the house. When the prosecutor
asked what occurred before Thompson pulled the knife, the victim testified as follows:



A. We sat there. We talked. You know, like I said he said he had some dope,
he had some marijuana he wanted to, you know, enjoy, have a good time.


Q. And what did you say?


A. I didn't say nothing. I told him, well, he had it. It was his. He could do
what he wanted to do with it.


Q. Did he do anything with any of it?


A. He handed it to me. You know, I didn't do nothing with it. I just held it,
you know.


Q. Did he use any of it? Did you use any of it?


A. No, I didn't.


Q. And you just held it in your hand?


A. Uh-huh.


Q. And then had he pulled the knife at that point.


A. After he had handed me this he say this was in exchange for me to do
something in exchange for him.


Q. Did he say specifically what he--


A. He wanted sex in return for it.


Q. And what did you say?


A. I told him, you know, "I ain't with that."



(Emphasis added). 

 Thompson argues that under rule 107, testimony that would ordinarily be
inadmissible becomes admissible when the door is opened by the victim's own testimony. See
Parr v. State, 557 S.W.2d 99, 102 (Tex. Crim. App. 1977) (under article 38.24, former version
of rule 107, once the State asked defendant about details behind previous conviction, defendant
permitted to explain why he entered a guilty plea). Thompson argues that the victim's response,
"I ain't with that," was a global assertion that she did not do such things, opening the door to
testimony that the victim had a reputation for exchanging sex for drugs. We disagree.

 We do not believe rule 107 applies to this case. Rule 107 provides:



When part of an act, declaration, conversation, writing or recorded statement is
given in evidence by one party, the whole on the same subject may be inquired into
by the other, as when a letter is read, all letters on the same subject between the
same parties may be given. When a detailed act, declaration, conversation, writing
or recorded statement is given in evidence, any other act, declaration, writing or
recorded statement which is necessary to make it fully understood or to explain the
same may also be given in evidence. "Writing or recorded statement" includes
depositions.



The purpose of rule 107 is to reduce the possibility of the fact finder receiving a false impression
from hearing incomplete evidence surrounding an act. See Evans v. State, 643 S.W.2d 157, 161
(Tex. Crim. App. 1982) (referring article 38.24, former version of rule 107). In this case, the
dispute relates to the conversation between Thompson and the victim in the vacant house. The
prosecutor asked the victim for her response to Thompson's request that he wanted sex in return
for drugs. The victim testified, "I told him, you know, `I ain't with that.'" She was relating a
specific statement made to Thompson at the house on the evening in question. Reputation
testimony about the victim's past sexual behavior does not complete this particular statement, or
make it more "fully understood," or provide the whole of the conversation between them. 
Thompson is not seeking to offer an undisclosed portion of their conversation or trying to provide
a better context in which to understand the victim's statement. Rather, he is trying to impeach
her testimony to show that she lied and did not make this statement at all, but in fact consented
to trade sex for drugs. He argues that she created a false impression to the jury that she is not the
kind of person who would trade sex for drugs.

 The victim's statement did not "open the door" to this kind of impeachment
evidence. When attempting to determine the meaning of a response, the question asked is a
determinative tool. See Prescott v. State, 744 S.W.2d 128, 131 (Tex. Crim. App. 1988) (after
examining context within which question asked and entire answer given, appellant did not open
door to impeachment by having left a false impression of his prior experience with the criminal
justice system); Delk v. State, 855 S.W.2d 700, 705 (Tex. Crim. App.), cert. denied, 114 S.Ct.
481 (1993). Within the context of the prosecutor's question, the trial court could reasonably
construe the victim's response, "I told him, `I ain't with that,'" to mean "no" to Thompson's offer
to exchange drugs for sex, conveying her refusal to consent. The victim's answer was responsive
to the question and not an attempt to give a gratuitous impression about her past. In light of the
Texas Rape Shield law, an alleged victim's testimony about the events of a sexual assault should
be strictly construed. The trial court did not abuse its discretion in refusing to allow the
reputation testimony. We overrule Thompson's first point of error.

 In the second point of error, Thompson argues that the State created fundamental
error by repeatedly referring to Thompson's incarceration, violating his right to the presumption
of innocence and his right to a fair and impartial trial. See Tex. Const. art. I, § 10; U.S. Const.
amend. VI; Tex. Code Crim. Proc. Ann. art. 2.03(b) (West 1977), art. 38.03 (West Supp. 1994);
Tex. Penal Code Ann. § 2.01 (West 1974). Thompson complains of three instances during the
trial. The first instance refers to the State's objection to defense counsel's cross-examination of
the victim. The testimony provides:



Q. Ms. [_______], my name is Linda Powell and I represent Michael
Thompson. Are you currently in the Travis County Jail on this cocaine
charge?


A. Yes, I am.


Q. All right. Why are you not wearing jail clothes?


[Prosecutor]: Objection, Your Honor. That's improper impeachment. The same
reason the defendant is not in jail clothes.



The second instance refers to the prosecutor's cross-examination of a defense witness, Michael
Bell, who Thompson asserts was wearing jail clothes:



Q. Mr. Bell, approximately how many times have you had the opportunity to
talk to Michael since he was arrested that night?


A. One time other than here.


Q. When did you talk to him today?


A. Well, we was off in the same tank.


Q. For how long?


A. Ten, fifteen minutes. Something like that.


Q. Were you all brought over together?


A. Yes.


Q. From where?


A. From Del Valle.


Q. Do you recall talking to him about this offense when he first was brought
into jail?


A. He was in jail way before I was.


Q. Do you remember telling me earlier that whenever you saw him first in jail
that you all talked about this offense?


A. Well, he mentioned it to me. I asked him was he still--I asked him. I think
I asked him was he still in jail and I think he told me that he was still off in
here for what he got arrested for. And he didn't talk too much about what
it was because we really didn't--he didn't--I guess he didn't--I never did ask
him or he just--you know, he just didn't really talk about it.



The third instance refers to the State's final argument:



So we need to stop it and we need to--we need you all to tell the community by
your verdict through the victim, through the defendant, through all of the
defendant's buddies, through all of his buddies in jail that he talks to. You know
what you all do today is going to get out to the people in jail through the defendant
and his buddies, through everybody else that's sitting here in the jury room.



Thompson argues that the fact that Thompson's only witness, Bell, was dressed in jail clothing,
combined with the State's repeated questions concerning Thompson's incarceration and its
comments made in final argument, combined to strip Thompson of his presumption of innocence. 
He relies on precedent holding that requiring the defendant to appear in jail clothes is reversible
error. See Estelle v. Williams, 425 U.S. 501 (1976); Randle v. State, 826 S.W.2d 943, 944-45
(Tex. Crim. App. 1992). Thompson argues that the State's conduct essentially "dressed"
Thompson in jail clothes, depriving him of a fair and impartial trial and requiring reversal. We
disagree.

 First, we believe the primary concern in Randle and Estelle was the visual image
of the accused in jail clothes, rather the knowledge that the accused was incarcerated during the
trial. In Estelle, the Supreme Court referred to earlier cases recognizing that "the constant
reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a
juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout
the trial that . . . an unacceptable risk is presented of impermissible factors coming into play." 
Estelle, 425 U.S. at 505. We do not believe the verbal reference to Thompson's incarceration at
three points during the trial poses the risk presented by actually compelling an accused to wear
jail clothes throughout the entire trial.

 Second, Thompson did not object to any of the three incidents. Relying on Estelle,
the Court of Criminal Appeals held that if a defendant timely objects to being put to trial while
dressed in prison clothes, he should not be compelled to stand trial in that attire. Randle v. State,
826 S.W.2d at 944-45. In Estelle, the Supreme Court held that while the State cannot, consistent
with the Fourteenth Amendment, compel an accused to stand trial before a jury while dressed in
identifiable prison clothes, the failure to make an objection to the court as to being tried in such
clothes, for whatever reason, is sufficient to negate the presence of the compulsion necessary to
establish a constitutional violation. 425 U.S. at 512-13. To the extent that the State's conduct
could be construed as essentially clothing the defendant in jail clothes, the failure to object
effectively negates the compulsion element. Moreover, the defense appeared to open the door to
the question of incarceration in the first two instances: when defense counsel asked the victim
why she was not wearing jail clothes, and when defense witness Bell testified, through a non-responsive answer, that he "was off in the same tank" with Thompson. 

 We cannot determine from the record whether Thompson's sole defense witness,
Bell, actually wore jail clothes at trial. Assuming this was the case, the same presumption of
innocence does not apply to witnesses because they are not the ones on trial. Thompson v. State,
514 S.W.2d 275, 277 (Tex. Crim. App. 1974). However, possible prejudice to the defense
should be avoided unless there are sufficient reasons to have his witness appear handcuffed and
in jail clothing. Id. In Kimble v. State, the Court of Criminal Appeals rejected the argument that
exhibiting the appellant's burglary accomplice in jail clothing was tantamount to forcing appellant
to trial in jail clothing and found no harm or prejudice to the appellant. Kimble v. State, 537
S.W.2d 254 (Tex. Crim. App. 1976). We conclude that, if the defense witness was in jail
clothes, there is no showing of harm or prejudice to appellant. Moreover, there was no objection
to Bell's jail attire, thus negating evidence of being compelled to wear such attire. See Estelle,
425 U.S. at 512-13. In addition, the defense specifically asked Bell about his active involvement
in the drug community in order to show that the victim was part of this drug community and had
a reputation for untruthfulness. 

 Finally, any error created by the State's conduct was harmless. The jury heard
evidence that both the victim and the defense witness were in jail on drug charges. Bell testified
that he knew the victim and had smoked crack with her. On cross-examination, Bell agreed that
he had also smoked crack with Thompson. Through unresponsive answers, Bell testified that he
was "off in the same tank" with Thompson. Thus, the jury knew that all the key parties at trial
were in jail and at one time involved in drug use. 

 In light of this evidence, the prosecutor asked the jury to send a message by its
verdict, "through the victim, through the defendant, through all of the defendant's buddies,
through all of his buddies in jail that he talks to. You know what you all do today is going to get
out to the people in jail through the defendant and his buddies, through everybody that's sitting
here in the jury room." By her argument, the prosecutor was telling the jury they could send a
message to the jail community. As a plea for law enforcement, the State may argue to the jury
the impact of their verdict on the rights of a particular segment of the community. Borjan v.
State, 787 S.W.2d 53, 56 (Tex. Crim. App. 1990). Courts of appeals have upheld jury arguments
that focus on narrower groups of the community such as gangs and police and those waiting for
trial in jail. See Lopez v. State, 860 S.W.2d 938, 942 (Tex. App.--San Antonio 1993, no pet.)
(upholding argument asking jury, "Can you imagine the bloodshed that you would unleash in
Bexar County with all the little gangsters out there laughing, Well, Henry our hero, he beat it,
he got off."); Jackson v. State, 738 S.W.2d 349, 351 (Tex. App.--Beaumont 1987, no pet.)
(upholding argument stating in part, "But I guarantee you one thing, it [jury's message] will go
right back up to the jail where you can rest assured that probably other people waiting their turn
at trial, that they decide that they won't--like this Defendant decided he wanted a trial."). 

 Moreover, any error in referring to the accused as part of the jail community was
not extreme or manifestly improper so as to require reversal. If knowledge of incarceration
affected the jury, it affected their view of the victim as well as the defendant. In addition, the trial
court instructed the jury: "All persons are presumed to be innocent and no person may be
convicted of an offense unless each element of the offense is proved beyond a reasonable doubt. 
The fact that a person may have been arrested, confined, or indicted for, or otherwise charged
with, the offense gives rise to no inference of guilt at his trial." We overrule Thompson's second
point of error.

 In Thompson's third point of error, he argues the State improperly argued by: (1)
calling Thompson and his defense witness liars; (2) injecting new facts into evidence about why
complainant could not identify the knife; (3) bolstering complainant's testimony; (4) asking the
jury to put themselves in complainant's place; and (5) asking the jury to send a message to
Thompson and his "jail buddies." Thompson failed to raise these objections at trial. (2) However,
error will not be waived for failure to object when the argument is manifestly improper, or
violates some mandatory statute, or injects some new fact harmful to the defendant's case. Willis
v. State, 785 S.W.2d 378, 385 (Tex. Crim. App. 1989), cert. denied, 498 U.S. 908 (1990).

 Because we have already addressed, in the second point of error, the State's
reference to Thompson's jail buddies, we will not address it here. We first address the State's
argument that both Thompson and his defense witness Bell were lying. With respect to
Thompson, the State argued:



Michael Thompson told the officers he didn't know [the victim]. Told them that
two or three times. "It's her story. I don't know this woman. I've never seen her
before in my life." And then he goes and gives a sworn statement to Sergeant
Johnson. I submit to you all that that's a lie. An out right lie. It was made on
separate days. He had time to think about it. He had time to tell the officer what
happened, what really happened, but he lied.



The State argued similarly about part of Bell's testimony:



The only person whose character for truthfulness is bad is Michael Bell. He lied
to you on the stand and he lied to you, directly to your face. And he was caught
lying. He was caught in those lies. The story about he hadn't been in trouble
when he had been arrested fourteen times and then he told you that the victim had
sold him drugs. But on cross-examination he admitted on the stand that he had told
us right back here in that room that she never sold him drugs. No, I don't think
he's a very credible person and I ask you not to find him to be credible either.


When the defendant's testimony is clearly contradictory to the preponderance of the evidence
introduced by the State, it is not reversible error for the prosecutor to argue that the facts of the
case prove that the accused was not telling the truth. Simpkins v. State, 590 S.W.2d 129, 136
(Tex. Crim. App. 1979) (rejecting argument that prosecutor committed reversible error by
intimating that defendant had lied and fabricated his defense). This rule applies to the defendant
and defense witness alike. Id. 

 A prosecutor may argue his opinions so long as the opinions are based on evidence
in the record and do not constitute unsworn testimony; furthermore, counsel may draw reasonable,
fair, and legitimate inferences from the facts in evidence. Allridge v. State, 762 S.W.2d 146, 156
(Tex. Crim. App. 1988), cert. denied, 489 U.S. 1040 (1989). Moreover, jury arguments must
be examined in context. Harkey v. State, 785 S.W.2d 876, 882 (Tex. App.--Austin 1990, no pet.). 
Thus, based on discrepancies in the record, it is not error for the prosecutor to argue that the
witness did not tell the truth in his testimony. See Mock v. State, 848 S.W.2d 215, 221 (Tex.
App.--El Paso 1992, pet. ref'd) (upholding argument stating in part, "I submit he has been lying
up right through his teeth the whole time . . ." and "[T]hen he says he didn't even shoot Officer
Pasqua. Didn't even know what happened to him. That's a lie. Blatant, bald-faced lie."); see
also Strout v. State, 688 S.W.2d 188, 192 (Tex. App.--Amarillo 1985, no pet.).

 In this case, the prosecutor's opinions are reasonable deductions from the evidence. 
Sergeant Paul Johnson testified that he interviewed Thompson, who said he had never been with
the victim and did not know her. Yet, the State offered evidence that the victim gave the knife
she said Thompson used during the rape to the police; Sergeant Johnson testified that Thompson's
girlfriend recognized the knife. Moreover, the jewelry that the victim testified Thompson took
from her after the rape was found in Thompson's home. The victim identified Thompson to the
police shortly after the rape and scientific evidence showed that Thompson was among the four
percent of the male population who could have been the source of the semen. With respect to
Bell, Thompson's defense witness, the prosecutor made a reasonable deduction based on Bell's
statement about his past criminal history, and the evidence of his past arrests presented during
cross-examination. We conclude the prosecutor argued about the falsity of particular statements
made by Thompson and Bell based on summation and reasonable deduction from the evidence. 
 

 Thompson next argues that the prosecutor improperly injected new facts into
evidence by explaining why the victim could not identify the knife and by bolstering the victim's
testimony by giving the prosecutor's opinion as to the victim's truthfulness. At trial, the victim
testified that she had given to the police the knife that Thompson used against her. Yet when the
knife was presented to the victim at trial, she could not identify the knife as the one used by
Thompson. During final argument, the prosecutor stated:



I submit to you that [the victim], when she took the stand she was painfully honest. 
So painfully that at times I was just going, "Oh, my God." The easiest example
is the knife. There's testimony that she identified the knife a couple of days after
the assault whenever Sergeant Johnson had it in his possession. She saw the knife
that was used on her throat and she told Sergeant Johnson, "That's the knife. I
recognize it." And he had it in his possession. Eight months have passed now. 
She's dreamed about this horrible crime.

 

 [Defense counsel]: Your honor, I'm going to object to the prosecution
testifying.

 

 The Court: We'll sustain the objection.


 [Prosecutor]: I submit to you that she's thought about this horrible crime that
occurred to there, over and over. I submit to you she's had nightmares about it
and I submit to you that as time goes on that knife blade does get longer and it does
get bigger. I submit to you that it would you, too.


 Whenever she sees this knife--she hasn't seen this knife since she gave it to the
officer eight months ago. And she sees this knife, she's doing her best to be
honest. She's doing her best to tell the truth. "No, ma'am. That's not the knife. 
That knife was much longer. I know. I remember that knife."


 And I submit to you that she was being as honest as she could possibly be in
this court. Or else why wouldn't she just say, "Oh yeah. That's the knife." You
know, the state has got all of the evidence. "That's the knife." She wanted to
make sure.



This argument does not present reversible error. One of the permissible areas of jury argument
is answering opposing counsel's argument. See Alejandro v. State, 493 S.W.2d 230, 231 (Tex.
Crim. App. 1973). The prosecutor's argument was invited by the defense counsel's rhetorical
questions during argument: "And [the victim] takes the witness stand and says, `That's not the
knife.' What's she thinking about? `That's not the knife.'" Defense counsel also argued, "You
heard Officer Villanueva say that that's the knife that she gave to him and hopefully our police
department would not do anything that would not be truthful. So, is she just mistaken about that?" 
In response, the prosecutor provided a reasonable hypothesis for why the victim could not identify
the knife when she had identified the same knife to Sergeant Johnson earlier.

 A prosecutor may make reasonable deductions from the evidence. See Kinnamon
v. State, 791 S.W.2d 84, 90 (Tex. Crim. App. 1990) (prosecutor's argument suggesting that
defendant fired third shot as robbery victims were fleeing into walk-in cooler was proper). Based
on the evidence, the prosecutor offered a hypothesis that the terrifying experience of the rape and
the passage of time possibly led her to be mistaken about the knife at trial. The victim had
testified that Thompson held a knife against her throat, tied her hands and feet, raped her, told
her, "Bitch, you're dead," hit her, and at one point shoved her under the kitchen sink. The victim
said that she was terrified, and that her life had flashed before her. The evidence showed that she
had given the knife to the police and had positively identified the knife to Sergeant Johnson; two
officers identified the knife at trial as the one the victim gave to them on the day of the offense.
However, when asked to identify the knife later at trial, the victim said the knife Thompson used
had a longer blade. The prosecutor could reasonably deduce from the evidence that her terrifying
experience led her to be confused and mistaken about the knife at trial. The prosecutor did argue
outside the record when she argued that the victim suffered from nightmares; however we hold
that this injected fact was not harmful. See Drakes v. State, 505 S.W.2d 892, 894-95 (Tex. Crim.
App. 1974) (prosecutor's statements that rape victim will "take tranquilizers the rest of her life,"
was not in evidence, but did not create reversible error).

 A prosecutor may not bolster its witness' credibility by unsworn testimony. 
Menefee v. State, 614 S.W.2d 167, 168 (Tex. Crim. App. 1981); Brown v. State, 309 S.W.2d
452, 453 (Tex. Crim. App. 1958). However, a prosecutor may give opinions based on evidence
in the record. McKay v. State, 707 S.W.2d 23, 37 (Tex. Crim. App. 1985), cert. denied, 479
U.S. 871 (1986). Examined in context, rather than telling the jury to believe her assessment of
the victim's credibility, the prosecutor referred to the victim's inability to identify the knife as the
one used by Thompson and the victim's frankness in telling the prosecutor how the knife differed. 
 By using, "painfully" to describe her honesty, the prosecutor recognized the discrepancies in her
case and offered a reasonable hypothesis to explain. We do not believe the argument constituted
bolstering by unsworn testimony. See Vasek v. State, 294 S.W.2d 810, 811 (Tex. Crim. App.
1956) (prosecutor's statement that police officer was an honest man was based on answers of the
witnesses before the jury); Smith v. State, 842 S.W.2d 401, 407 (Tex. App.--Fort Worth 1992,
pet. ref'd) (holding prosecutor's argument that victim "has told you nothing but the truth from the
very first moment" and did "not mislead you in any way," was a reasonable deduction from the
evidence). Moreover, the defense had argued that if the victim was mistaken about the knife, she
could have been mistaken about other things. The prosecutor was merely arguing in response that
if the victim was being honest about not recognizing the knife, she was being honest about other
things as well. We find no reversible error in this argument. 

 Finally, the trial court sustained Thompson's objection. Thompson received no
adverse ruling but instead received all the relief he requested. See Boyd v. State, 643 S.W.2d
700, 707 (Tex. Crim. App. 1982). Even if the prosecutor's argument improperly bolstered the
victim's testimony, we believe an instruction to disregard would have cured this harm. See
Gardner v. State, 730 S.W.2d 675, 698 (Tex. Crim. App.), cert. denied, 484 U.S. 905 (1987)
(holding court's instruction to disregard and prosecutor's subsequent restatement of question cured
harm of improper bolstering). 

 Thompson complains that the State asked the jurors to put themselves in the
victim's place. The prosecutor addressed some of the discrepancies in the case:



 Also she [the victim] didn't mention in her statement that about the oral sex
but then she told the nurse about it. The nurse that she had talked to for the rape
exam just probably hours before she told Sergeant Johnson her story again. I
submit to you that it's not an intentional deception that she didn't get every detail
that she had first told the nurse into the story that she had again told Sergeant
Johnson.


 Also I submit to you that person that has the kind of life that [the victim] has,
that lives where she's is, has had involvements with the police before, isn't going
to walk into the Austin Police Department to the jail where you walk through
hundreds of officers and say, "Yeah, you know, we went in there and we were
talking about--drugs and sex," and, you know, all of this that went on.


 I submit, and Sergeant Johnson testified, that that's common for victims and
witnesses to kind of leave out drug use and drug talk. I submit to you that there's
nothing wrong with that. Look at where [the victim] is, where she came from,
what her life is, in her place when you all go back in there. Be in her place
whenever you go back in the jury room and think about her testimony.


 Think if you all were her how you would testify and the things that you could
remember and couldn't remember about an extremely traumatic event where you
were--the knife was put to your throat, you were tied up, you were beat, you were
terrorized, you were told you weren't going to live, that you were going to die,
"Bitch." That you were crammed--tried to cram under a sink.



(Emphasis added). It is generally improper to ask the jury to put themselves in the victim's place. 
See Brandley v. State, 691 S.W.2d 699, 712 (Tex. Crim. App. 1985); Chandler v. State, 689
S.W.2d 332, 334 (Tex. App.--Fort Worth 1985, pet. ref'd). If this argument was erroneous, a
timely instruction to disregard would have cured the error. See Brandley, 691 S.W.2d at 713;
Chandler, 689 S.W.2d at 335; Adell v. State, 211 S.W.2d 575, 576 (Tex. Crim. App. 1948). 
Therefore, no fundamental error is presented.

 In his fourth point of error, Thompson argues he was denied effective assistance
of counsel. For an ineffective assistance claim, the defendant must show: (1) that his counsel's
assistance was deficient; and (2) that the deficient performance prejudiced the defense; that is, but
for the deficient performance, the result would have been different. Strickland v. Washington,
466 U.S. 668, 687 (1984); see Butler v. State, 872 S.W.2d 227, 241 (Tex. Crim. App. 1994). 
Texas has adopted the Strickland test. Hernandez v. State, 726 S.W.2d 53, 57 (Tex. Crim. App.
1986). Counsel is strongly presumed to have rendered adequate assistance and made all
significant decisions in the exercise of reasonable professional judgment. Strickland, 466 U.S.
at 690. The Strickland test is to be judged by the totality of the representation. McFarland v.
State, 845 S.W.2d 824, 843 (Tex. Crim. App. 1992), cert. denied, 113 S. Ct. 2937 (1993). The
accused bears the burden of proving ineffective assistance of counsel by the preponderance of the
evidence. Ex parte Kunkle, 852 S.W.2d 499, 505 (Tex. Crim. App.), cert. denied, 114 S. Ct.
122 (1993). 

 To support his claim, Thompson identifies six instances in which his counsel failed
to object: (1) the defense witness wearing jail clothes; (2) the prosecutor's comment that
Thompson was not in jail clothes; (3) admission of the knife into evidence; (4) the State's cross-examination of defense witness concerning his past criminal record; (5) State's cross-examining
Bell about being in jail with Thompson; and (6) the prosecutor's jury argument.

 We do not believe the defense counsel was ineffective for failing to object to the
State's comment regarding jail clothes. Any objection to this comment most likely would have
spelled out and emphasized to the jury that Thompson was currently incarcerated. See Cooper
v. State, 788 S.W.2d 612, 618 (Tex. App.--Houston [1st Dist.] 1990, pet. ref'd) (concluding that
if defense counsel had objected to testimony, he probably would have focused jury's attention to
the fact that appellant did not deny possession of the cocaine at the time of the arrest). Left alone,
the comment remained innocuous. 

 As to the defense witness wearing jail clothes, the record is unclear whether jail
clothes were actually worn. If they were worn, while the better course may have been to object
and request civilian clothes, we believe seeing the defense witness in jail attire had little impact
on the jury. One purpose of Bell's testimony was to discredit the victim by showing that Bell had
been actively involved in the drug community, knew the victim, had smoked crack with her, and
knew her to have bad reputation for truthfulness. Thus, the jury was fully aware that he had been
involved in illegal activities.

 Moreover, the State was entitled to cross-examine Bell about his criminal past, and
therefore an objection to this inquiry would be without merit. When a witness leaves a false
impression about his criminal past during direct examination, he opens the door to inquiry by the
State during cross-examination. Delk, 855 S.W.2d at 704; Prescott, 744 S.W.2d at 131. During
direct, Bell had been asked by defense counsel to give the jury an idea of the past trouble he had
been in. Most likely, the strategy was to associate Bell with the victim and to take potential
ammunition away from the State. Bell mentioned burglary and drug possession and said: "I got
out in '76, and I got paroled in '81. I stayed out of the penitentiary about fourteen years before
I got in some more trouble." This left the impression that Bell had not been in trouble for the
entire fourteen-year period, and opened the door to the State asking him if he had been arrested
for various offenses during this fourteen-year period.

 Thompson also complains that defense counsel failed to object when the State cross-examined Bell at length about being in jail with Thompson. Bell provided this testimony through
his non-responsive answers that he was "off in the same tank" with Thompson. The substance
of the prosecutor's questioning was to demonstrate that Bell had discussed the offense with
Thompson before trial, rather than emphasizing where this discussion took place. Moreover, we
cannot say that but for the failure to object, the result of the proceeding would have been
different. 

 With respect to the knife's admission, there was a proper basis for its admission. 
While the victim testified that the knife at trial was not the same knife used, Officer Villanueva
and Officer Lee identified the knife at trial as the one the victim gave to them shortly after
escaping from the scene. Officer Villanueva testified that the victim ran up to them, crying and
telling them that she had been assaulted and raped. She gave them the knife, saying that it was
used in the offense. Officer Villanueva testified he tagged the knife as evidence. He identified
the knife, and at this point, the knife was offered into evidence, rather than during the victim's
testimony.

 Sergeant Johnson testified that he took the knife tagged as evidence and showed it
to Thompson's girlfriend who recognized it. The victim also testified that the knife Sergeant
Johnson showed her two days after the rape was the knife Thompson used. Therefore, there was
a proper basis for admitting the knife. Moreover, a weapon offered into evidence should not be
rejected solely because it is not positively identified as the exact object that was connected with
the crime. Foster v. State, 779 S.W.2d 845, 861 (Tex. Crim. App. 1989), cert. denied, 494 U.S.
1039 (1990); Binyon v. State, 545 S.W.2d 448, 452 (Tex. Crim. App. 1976); see also Hall v.
State, 862 S.W.2d 710, 716 (Tex. App.--Beaumont 1993, no pet.) (holding counsel not ineffective
for failing to object to admission of gun where victim equivocated on the identification of
weapon). Lack of positive identification affects the weight of the evidence, rather than its
admissibility. Binyon, 545 S.W.2d at 452. 

 Finally, Thompson complains of counsel's failure to object during jury argument
to the prosecutor's reference to jail buddies, to the argument that Thompson and Bell were lying,
and to the bolstering of the victim's credibility. We have already concluded that the State's
argument concerning lies was based on a reasonable deduction from the evidence. Moreover, we
concluded that the prosecutor did not improperly bolster the victim's credibility. With respect to
reference to Thompson's jail buddies, the prosecutor may make a plea for law enforcement,
focusing on a specific segment of society. To the extent the prosecutor improperly referred to
Thompson's incarceration, Thompson has not demonstrated that there is a reasonable probability
that the result of the trial would have been different. 

 Based on the totality of counsel's representation, we conclude Thompson was not
denied effective assistance of counsel. We overrule the fourth point of error. Having overruled
all points of error, we affirm the conviction.



 

 Jimmy Carroll, Chief Justice


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: August 17, 1994

Do Not Publish

1.   Rule 412(a) provides: 


In a prosecution for sexual assault or aggravated sexual assault, or
attempt to commit sexual assault or aggravated sexual assault,
reputation or opinion evidence of the past sexual behavior of an
alleged victim of such crime is not admissible.
2.   Thompson did object to the testimony concerning the knife, stating "I'm going to object
to the prosecution testifying." However, the court sustained this objection; therefore,
Thompson does not have an adverse ruling of which to complain.