**Affirmed as Modified and Opinion filed December 21, 2018.**



In The

# Fourteenth Court of Appeals

NO. 14-18-00048-CR
NO. 14-18-00049-CR

**JOSHUA MARQUIS BELL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 177th District Court
Harris County, Texas
Trial Court Cause Nos. 1465758 &1440135**

## O P I N I O N

Appellant was on deferred adjudication community supervision (probation) for one count each of aggravated assault with a deadly weapon and aggravated promotion of prostitution. In two issues, appellant challenges the trial court's revocation of probation. He contends that (1) the evidence was insufficient to support the trial court's finding that appellant violated the conditions of probation, and (2) the trial court erred by considering the State's closing argument about facts not in evidence. We affirm.

## I.    SUFFICIENCY OF EVIDENCE FOR PROBATION VIOLATION

The State alleged that appellant violated conditions of his probation by failing to pay fees and costs and by committing a new offense, i.e., family violence assault against his girlfriend. In his first and second issues, appellant contends that the evidence was insufficient to prove either allegation. Regarding the family violence assault, he contends that (1) the State failed to prove that appellant intentionally, knowingly, or recklessly caused bodily injury to the girlfriend; and (2) appellant's use of force was justified to remove the girlfriend from his home because she was a trespasser.

### A.    Appellant's Plea

At the outset, the State contends in its brief that appellant pleaded "true" to the allegations and that a plea of "true" is sufficient to support the trial court's revocation of probation. Appellant disputes this contention, and we agree with appellant.

The record reflects that appellant initially pleaded "true" to the allegations in the State's motion to adjudicate before the State read aloud the allegations. After some discussion with appellant, the court took a recess, and then the State read aloud the allegations. To these allegations, appellant pleaded "not true."

The judgments in each case erroneously reflect that appellant pleaded "true" to the allegations. Accordingly, we reform the judgments to reflect that appellant pleaded "not true." *See Houston-Randle v. State*, 499 S.W.3d 912, 915–16 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd). We now address the merits of appellant's first and second issues.

### B.    Standard of Review

To revoke probation, the State must prove a violation of a condition of probation by a preponderance of the evidence. *Hacker v. State*, 389 S.W.3d 860, 864–65 (Tex. Crim. App. 2013). A preponderance of the evidence is met if the greater weight of the

credible evidence creates a reasonable belief that the defendant has violated a condition of probation. *Id.* at 865.

We review the trial court's ruling for an abuse of discretion. *Id.* A trial court does not abuse its discretion if the ruling is within the zone of reasonable disagreement. *Burch v. State*, 541 S.W.3d 816, 820 (Tex. Crim. App. 2017). A ruling is within this zone if there are two reasonable views of the evidence. *Id.*

Evidence is sufficient to revoke probation if there is more than a scintilla of evidence. *Hacker*, 389 S.W.3d at 865. The trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Id.* To reverse a trial court's rejection of a justification defense, an appellate court would need to conclude that the defense was "shown as a matter of law." *Roberts v. State*, 363 S.W.2d 261, 262 (Tex. Crim. App. 1962).

## C.    Legal Principles

To prove that appellant committed a new offense in this case, the parties agree that the State had to prove, among other things, that appellant caused bodily injury to the girlfriend and did so at least recklessly. *See* Tex. Penal Code § 22.01(a)(1). A "bodily injury" assault is a result-oriented offense. *Landrian v. State*, 268 S.W.3d 532, 536 (Tex. Crim. App. 2008). A person acts recklessly with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. Tex. Penal Code § 6.03(c).

A person in possession of land is justified in using force "when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land." *Id.* § 9.41(a). A "reasonable belief" is one that would be held by an ordinary and prudent person in the same circumstances as the actor. *Id.* § 1.07(a)(42). A person may not use more force than is necessary to eject or expel

someone from the person's home. *Petty v. State*, 70 S.W.2d 718, 719 (Tex. Crim. App. 1934). Whether a belief was reasonable and justifiable and whether the defendant used more force than necessary under the circumstances are questions for the factfinder to decide. *See Henley v. State*, 493 S.W.3d 77, 93–94 (Tex. Crim. App. 2016) (regarding self-defense) (citing *Hayes v. State*, 728 S.W.2d 804, 808 (Tex. Crim. App. 1987)); *see also Juarez v. State*, 308 S.W.3d 398, 405 (Tex. Crim. App. 2010) (noting that whether conduct is excused by a necessity defense is a question for the factfinder).

## D.    Evidence

Two witnesses testified during the hearing: the girlfriend and appellant. The girlfriend, who was pregnant with appellant's child at the time of the altercation, testified that she discovered appellant had been speaking "sexually" with the girlfriend's best friend. The girlfriend testified that she was upset with appellant, and she told appellant that she would "fuck his life up." She drove to appellant's house and knocked on the door. He let her inside, and they argued. She testified that she did not "get physical" with him; she didn't touch him. He wanted her to leave, but she refused to leave right away. He was trying to get her out of the house when he grabbed her. He "jumped" her and grabbed her by the neck. He had a strong grip on her neck, and she felt like she couldn't breathe. She testified that he asked her to leave numerous times while grabbing her and that the purpose of him grabbing her was to get her out of the house.

The girlfriend was able to leave and call 911. When officers arrived, they took photographs of her injuries. The photographs were admitted as exhibits and depict red marks on her neck and on her wrist.

The girlfriend testified that for some time after the incident, appellant would constantly call her phone. He would use different phone numbers to call her, and she had to block over thirty of them. He also hacked into her phone and her social network

4

websites, called people who she knew, and told them untrue things—embarrassing, personal things.

Appellant testified that the girlfriend was upset when she came to his house. She was ringing the doorbell, honking her car horn, and calling him. He let her inside, and at first, he wanted to try to work things out. He testified that she broke his television and threw a plate, and eventually she started swinging at him. He testified that he asked her to leave multiple times, but she would not. He testified, nonetheless, that he did not punch, slap, kick, or choke her.

The girlfriend testified that she weighed 105 pounds and was five feet, three inches tall. Appellant weighed 200 pounds and was six feet, once inch tall.

## E.    Analysis

Appellant does not dispute that he caused bodily injury to the girlfriend, but he contends that there is insufficient evidence of his intent. As the sole judge of the weight and credibility of the evidence, the trial court could have credited the girlfriend's testimony that appellant grabbed her by the neck and choked her. *See Hacker*, 389 S.W.3d at 865. Proof of his culpable mental state can be inferred from his words and conduct. *See Bin Fang v. State*, 544 S.W.3d 923, 928 (Tex. App.—Houston [14th Dist.] 2018, no pet.). The trial court could have inferred that appellant acted at least recklessly because a person would be aware that there is substantial and unjustifiable risk of bodily injury by choking someone. *Cf. id.* at 928–29 (holding that beating with a fist was reasonably certain to cause bodily injury).

Similarly, it was within the zone of reasonable disagreement for the trial court to find that appellant exerted more force than necessary to remove the girlfriend from his home during a heated argument. In particular, the trial court could have concluded that appellant's choking a former lover who was half his size was not reasonable and

justifiable under the circumstances. *See Henley*, 493 S.W.3d at 93–94 (reasonableness of justification defense is a question for the factfinder). And, the court could have inferred that an ordinary and prudent person under the same circumstances as appellant would not have reasonably believed choking the girlfriend was immediately necessary to terminate the girlfriend's trespass in appellant's home. The trial court heard evidence that the girlfriend was initially a guest in the home and that appellant harbored animosity toward the girlfriend well after the altercation.

In sum, there is more than a scintilla of evidence to support the trial court's finding that appellant committed a new offense by recklessly, and unjustifiably, causing bodily injury to his girlfriend.

Appellant's first and second issues are overruled.

## II.    IMPROPER ARGUMENT

Appellant complains in his third issue that the trial court overruled an objection to the State's closing argument concerning facts not in evidence. The State contends that appellant failed to preserve error for most of the statements that appellant complains about on appeal, that the sole statement for which error was preserved was a proper summation of the evidence, and that any error in allowing the State to make the statement was harmless.

## A.    Background

Appellant pleaded guilty to the offenses of aggravated assault with a deadly weapon and aggravated promotion of prostitution. In the assault case, appellant's judicial confession described appellant's conduct as follows: "intentionally and knowingly threaten [the complainant] with imminent bodily injury by using and exhibiting a deadly weapon, namely, A FIREARM." The district clerk's file in the assault case includes a complaint signed by a peace officer. In the complaint, the officer

alleges that the complainant was searching for his missing daughter, and he tracked her to appellant's vehicle. When the complainant yelled for his daughter to come to him, the daughter instead got into appellant's vehicle. The complainant yelled for his daughter to get out, but appellant got out of the vehicle. Appellant pointed a gun in the complainant's face and threatened to shoot.

During the revocation hearing, the State cross-examined appellant about the underlying offenses of aggravated assault and aggravated promotion of prostitution. Appellant denied most of the State's allegations.[1] The State did not adduce other evidence concerning the underlying offenses.

The State began its closing argument as follows:

| | |
|---|---|
| MR. BATY: | Thank you, Your Honor. I want to begin talking about the cases that Mr. Bell is on probation for. |
| | He is on probation, Your Honor, for aggravated assault with a deadly weapon where he put a gun to a father's head. The father was chasing his daughter who was a runaway trafficked child. He—the father confronted Mr. Bell. Mr. Bell— |
| MR. GARDNER: | Judge, I'm going to object. He's testifying to things that are not in evidence. |
| MR. BATY: | They are in evidence because they are in the original case. |
| THE COURT: | Overruled. |
| MR. BATY: | Mr. Bell put a gun to his head and said, "Get the fuck away from my car. I'm going to get—I'm taking your girl. I'm leaving." |

---

[1] For example:

Q. So you didn't put a gun to anybody's head?
A. No.
. . . .
Q. So you didn't force [a runaway juvenile] to have oral sex with somebody else?
A. No, sir.

That juvenile gave an interview in that case stating that Mr. Bell forced her to have oral sex with men for money. Yet, Mr. Bell doesn't take responsibility for those actions. Had it been me, deferred would not have been appropriate in that case right off the start. However, here we are.

After that case Mr. Bell picks up an aggravated promotion of prostitution where two prostitutes, who are adults this time, show up to a hotel room with undercover officers, agree to make sex tapes with those undercover officers. Mr. Bell is downstairs in the car waiting for payment, waiting to manage them, communicating with the officers back and forth.

On appeal, appellant complains about the State's arguments concerning facts of the offenses.

## B.     Preservation of Error

The State contends that appellant only preserved error regarding the sentence immediately preceding the objection: "He—the father confronted Mr. Bell." We do not agree with such a narrow view of the objection, but we agree with the State that appellant failed to preserve error for any improper arguments the State made *after* the trial court overruled appellant's objection.

As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Lackey v. State*, 364 S.W.3d 837, 843 (Tex. Crim. App. 2012). To preserve error regarding an improper argument, a party must object each time an allegedly improper argument is made. *Johnson v. State*, 416 S.W.3d 602, 616–17 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996). A party must keep making futile objections or risk waiver. *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) (concerning admission of evidence). An objection must be sufficiently clear to give the

8

trial court and opposing counsel an opportunity to address it, and if necessary, correct the purported error. *Thomas v. State*, 505 S.W.3d 916, 924 (Tex. Crim. App. 2016).

To be timely, an objection must be lodged as soon as the party knows or should know that the error has occurred. *Lackey*, 364 S.W.3d at 843. In a bench trial, strict timeliness of a complaint "may not be quite 'as crucial'" because a judge, in the capacity as legal arbiter, is presumed to be able to disregard those matters the judge deems to be inappropriate for the judge to consider in the separate role as fact-finder. *Id.* (quoting *Garza v. State*, 126 S.W.3d 79, 83 (Tex. Crim. App. 2004)); *see also Quick v. State*, 557 S.W.3d 775, 787–88 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) (noting that courts have been more lenient and flexible regarding error preservation in a bench trial because the timing of an objection does not matter if the trial court still has an opportunity to make a ruling on the objection, but a complaint about closing argument not made until a motion for new trial was untimely).

Appellant's objection was timely and specific enough to preserve error for all of the arguments made before the objection. At the time of appellant's objection, the trial court still had the opportunity to address it, and if necessary, correct the error. *See Thomas*, 505 S.W.3d at 924; *Quick*, 557 S.W.3d at 788; *see also Coggeshall v. State*, 961 S.W.2d 639, 641–42 (Tex. App.—Fort Worth 1998, pet. ref'd) (objection preserved error regarding reference to fact not in evidence although the objection was "not as specific or timely as it could have been" when appellant objected two sentences after the objectionable content). Thus, appellant made a timely objection to the following arguments by the State: (1) appellant "put a gun to the father's head"; (2) the father had been "chasing his daughter who was a runaway trafficked child"; and (3) the father confronted appellant. Appellant preserved error for these statements.

However, after the trial court overruled appellant's objection, the State made new factual assertions. Appellant did not object to the following statements, which he

9

now complains about on appeal: (1) appellant said, "Get the fuck away from my car. I'm going to get—I'm taking your girl. I'm leaving."; (2) the "juvenile gave an interview" stating that appellant "forced her to have oral sex with men for money"; (3) appellant's aggravated promotion of prostitution charge involved two adults who agreed to make "sex tapes" with undercover officers; and (4) appellant was "downstairs in the car waiting for payment, waiting to manage them, communicating with the officers back and forth." These new factual assertions were not the same statements that the State had made before the objection. *Cf. Graham v. State*, 710 S.W.2d 588, 591–92 (Tex. Crim. App. 1986) (error preserved for the admission of testimony when the trial court had "just overruled [the appellant's] objection" to the same question). Accordingly, appellant was required to lodge another objection to preserve error, but he failed to do so. *See Johnson*, 416 S.W.3d at 616–17.

## C.     Facts Outside the Record

References to facts that are neither in evidence nor inferable from the evidence are generally designed to arouse the passion and prejudice of the fact-finder. *Freeman v. State*, 340 S.W.3d 717, 728 (Tex. Crim. App. 2011). Thus, the State may not use closing arguments to present evidence that is outside the record. *Id.*

During a hearing to revoke community supervision, a trial court may take judicial notice of evidence heard in a prior criminal trial of the probationer. *Bradley v. State*, 564 S.W.2d 727, 729 (Tex. Crim. App. 1978). The court need not take judicial notice of documents in the court's file, such as the judgment and order of community supervision. *See Cobb v. State*, 851 S.W.2d 871, 874–75 (Tex. Crim. App. 1993). Formal proof of documents in the court's file is not required during a community supervision revocation hearing, so long as the documents appear in the record. *See id.*; *see also, e.g., In re A.W.B.*, No. 14-11-00926-CV, 2012 WL 1048640, at *2–3 (Tex. App.—Houston [14th Dist.] Mar. 27, 2012, no pet.) (mem. op.) (noting that an

appellate court may presume that the trial court took judicial notice of the record without any request being made and without any announcement that it has done so; the trial court is presumed to judicially know what has previously taken place in the case tried before it; and the parties are not required to prove facts that the trial court judicially knows). Moreover, an appellate court has discretion to take judicial notice of adjudicative facts when necessary to avoid an unjust judgment. *Watkins v. State*, 245 S.W.3d 444, 455–56 (Tex. Crim. App. 2008).

In this case, we take notice of appellant's judicial confession, which shows that appellant used a firearm to commit the aggravated assault and that the assault was committed by threat. Thus, the State's reference during closing argument to appellant brandishing a gun and making a threat against the complainant was not outside the record.

However, the State contends further that the remainder of its argument was not outside the record because the peace officer's allegations in the complaint, found in the district clerk's file, supplied evidence in support of the State's argument. The State cites no authority to support considering the complaint as evidence. Appellant responds that the complaint is hearsay and that considering it would violate his right to confrontation and cross-examination. These arguments raise a slew of troublesome issues that are not fully briefed by the parties. For example, whether a court may judicially notice the substance of a complaint as evidence,[2] whether the Confrontation

---

[2] *See Resendez v. State*, 256 S.W.3d 315, 324 (Tex. App.—Houston [14th Dist.] 2007) ("Assertions made by an individual, even under oath, are generally not the type of facts capable of accurate and ready determination by a source whose accuracy cannot reasonably be questioned."), *rev'd on other grounds*, 306 S.W.3d 308 (Tex. Crim. App. 2009); *Jackson v. State*, 139 S.W.3d 7, 21 (Tex. App.—Fort Worth 2004, pet. ref'd) (holding that "while a court may judicially notice the existence of the affidavit in its file, the court may not take judicial notice of the truth of the factual contents contained in such an affidavit because those facts are not the kinds of facts that a court may judicially notice").

Clause applies to a deferred adjudication probation revocation proceeding and the sentencing aspect of that hearing,[3] and whether appellant waived his rights by signing plea paperwork that contained some waiver language[4]—not to mention preservation, complicated by the fact that the State did not ask the trial court to take notice of the complaint so appellant had no opportunity to object.

As noted above, the record includes appellant's confession that he used a firearm to make a threat, so any argument based on these facts would not be outside the record. However, we assume without deciding that the following of the State's arguments were outside the record: (1) appellant put the gun to the complainant's head; (2) the complainant was a father who was "chasing his daughter who was a runaway trafficked child"; and (3) the complainant confronted appellant. Thus, we assume that the trial court erred by overruling appellant's objection to these facts outside the evidence.

---

[3] *See Stringer v. State*, 309 S.W.3d 42, 47–48 (Tex. Crim. App. 2010) (noting federal authority holding that the Confrontation Clause did not apply to sentencing hearings before a judge; holding that the Clause did not apply to presentence investigation reports in sentencing hearings before a judge, but reasoning that a "probation officer who prepares the report is neutral and the report is written in anticipation of consideration by the trial judge for sentencing, *not for prosecution*" (emphasis added)); *Dixon v. State*, 244 S.W.3d 472, 482–83 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (holding that Confrontation Clause applies to punishment phase of a trial). *Compare Trevino v. State*, 218 S.W.3d 234, 239 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (holding that Confrontation Clause did not apply to a regular probation revocation hearing because the Clause does not apply after a conviction), *with Cantu v. State*, 339 S.W.3d 688, 690–91 (Tex. App.—Fort Worth 2011, no pet.) (avoiding the question of whether Confrontation Clause applies to deferred adjudication probation revocation proceedings; noting that deferred adjudication means, unlike ordinary probation revocation proceedings, there has been no conviction, so it is unclear whether the *Trevino* rationale applies).

[4] *See Stringer v. State*, 241 S.W.3d 52, 57–59 (Tex. Crim. App. 2007) (holding that the defendant did not waive his Confrontation Clause right by pleading guilty under the particular facts of the case; whether he waived the right at the punishment stage was "controlled by the text of the written waiver" contained in the guilt-stage plea paperwork).

**D.      Harm Analysis**

The harm analysis for improper arguments during a bench trial is not well-defined. For many years in Texas, appellate courts presumed that a trial court presiding at a bench trial would disregard inadmissible evidence and improper argument. *See, e.g.*, *Atkins v. State*, 423 S.W.2d 579, 580 (Tex. Crim. App. 1968). This presumption was a type of harmless error test, developed from civil cases before the promulgation of former Rule 81(b)(2) of the Texas Rules of Appellate Procedure concerning harm in criminal cases. *See Gipson v. State*, 844 S.W.2d 738, 740–41 (Tex. Crim. App. 1992).[5] Based on the text of former Rule 81(b)(2), the Court of Criminal Appeals expressly disavowed the presumption as applicable to inadmissible evidence. *Gipson*, 844 S.W.2d at 740–41. Instead, former Rule 81(b)(2) created a presumption that error was harmful and reversible. *See Ovalle v. State*, 13 S.W.3d 774, 784 n.34 (Tex. Crim. App. 2000).

Since *Gipson*, former Rule 81(b)(2) was amended so the presumption of harm only applies to constitutional error. *Id.* In *Ovalle*, the Court of Criminal Appeals declined to resolve, in light of the amended rule, the question of whether the former presumption (that a trial court will disregard inadmissible evidence) would still apply to non-constitutional error. *See id.*

This court, however, has criticized the "absurdity" of the former presumption, concluding that it "strained credulity because there was no principled basis upon which to presume the trial court that ruled the evidence admissible would not consider it because it was, in fact, inadmissible." *Young v. State*, 994 S.W.2d 387, 389 (Tex. App.—Houston [14th Dist.] 1999, no pet.). "Indeed, the presumption should have been

---

[5] Former Rule 81(b)(2) is substantially similar to the current standard for evaluating harm from constitutional errors. *Compare Gipson*, 844 S.W.2d at 740 (quoting former Rule 81(b)(2)), *with* Tex. R. App. 44.2(a).

the exact opposite: Why would a trial court admit evidence, over objection, if the trial court did not intend to consider it?" *Id.*

*Gipson* and *Young* concerned the applicability of the former presumption to inadmissible evidence—not necessarily improper argument. But the presumptions are cut from the same cloth. *See Atkins*, 423 S.W.2d at 580. Thus, we will apply *Gipson* and *Young* to improper arguments in a bench trial since *Gipson* has not been overturned or modified by the Court of Criminal Appeals. The rationale in *Young* is equally applicable to an improper argument: Why would a trial court allow the State to make improper arguments, over objection, if the trial court did not intend to consider those arguments?

Accordingly, we look to Rule 44.2(b) and apply the harmless error standards for non-constitutional error. *See Martinez v. State*, 17 S.W.3d 677, 692 (Tex. Crim. App. 2000). Under the rule, an error that does not affect substantial rights must be disregarded. Tex. R. App. 44.2(b); *Martinez*, 17 S.W.3d at 692. A substantial right is affected if the error had a substantial and injurious effect or influence in determining the verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). When the error involves improper argument, we balance the following factors: (1) severity of the misconduct (prejudicial effect); (2) curative measures; and (3) certainty of conviction or punishment absent the misconduct. *Martinez*, 17 S.W.3d at 692–93; *see Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004).

Regarding the severity of the misconduct, we consider the prejudicial effect on the trial court's decision to revoke probation and on the punishment assessed. As a result of the State's improper argument, the trial court learned that the complainant in the assault case was the father of a "runaway trafficked child," that the father confronted appellant, and that appellant put a gun to the father's head. The trial court would have already known that the weapon was a gun, since appellant's plea paperwork

14

described the weapon as a firearm. And the trial court would have already known that the assault involved a threat. The additional facts that the complainant confronted appellant and that appellant put a gun to the complainant's head would not be surprising to trial court. *See Martinez*, 17 S.W.3d at 693 (mild degree of misconduct in part because jurors would not have been surprised to hear that the victims' families were upset with the defendant and wanted retribution). At this point in the State's argument, the trial court would not have known that appellant was involved with child trafficking or any other underlying facts. Thus, the trial court did not know that *appellant* had been accused of trafficking the child—only that the child had been a "runaway trafficked" child.

In assessing harm, we cannot consider the unpreserved error in the State's argument, i.e., that appellant forced the minor to have oral sex for money, which later served to link appellant to trafficking the child. *See Watts v. State*, 371 S.W.3d 448, 461 n.1 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Moreover, because appellant did not object to the State's argument concerning oral sex, the earlier reference to the "runaway trafficked child" was less likely to be impactful on the trial court's decision to adjudicate or in assessing an appropriate sentence. *See Smith v. State*, 842 S.W.2d 401, 406 (Tex. App.—Fort Worth 1992, pet. ref'd) (any error from overruling improper argument was "cured" because the State made the same argument elsewhere during closing argument); *cf. Mosley v. State*, 983 S.W.2d 249, 258 (Tex. Crim. App. 1998) (noting that error in the admission of evidence can be rendered harmless by the admission of other similar evidence). Accordingly, the misconduct was not severe in light of the entire case. This factor does not favor a finding of harm. *See Martinez*, 17 S.W.3d at 693.

No curative measures were taken. The State's argument was not particularly lengthy overall, so the objected-to evidence took up a moderate amount of the State's

argument. This factor favors a finding of harm. *See Watts*, 371 S.W.3d at 460; *see also Martinez*, 17 S.W.3d at 693; *cf. Tucker v. State*, No. 07-10-00421-CR, 2011 WL 3652762, at *3 (Tex. App.—Amarillo Aug. 19, 2011, pet. ref'd) (mem. op., not designated for publication) (declining to presume that trial court disregarded improper argument, consistent with *Gipson*, but reasoning that the remedial measures of the trial court ameliorated any harm because the trial court sustained the objection, considered the prosecutor's statement withdrawn, and afforded it no consideration).

The third factor focuses on the strength of the evidence to determine the certainty of the conviction or punishment. *See Watts*, 371 S.W.3d at 460; *see also Hawkins*, 135 S.W.3d at 85. In *Watts*, for example, this court reversed a conviction on one count because the evidence of guilt was "less than conclusive" and "not in any way certain," but affirmed the conviction on another count because the evidence of guilt was overwhelming. *See* 371 S.W.3d at 460–62.

Regarding the trial court's decision to revoke probation and adjudicate appellant's guilt, the evidence strongly showed that appellant committed an offense against the State by assaulting his girlfriend. The third factor, therefore, does not favor a finding of harm regarding the revocation of probation. With the first and third factors not favoring a finding of harm, we do not find that appellant was harmed regarding the decision to revoke probation.

However, the third factor presents a closer question on the issue of punishment. "The sentencing process consists of weighing mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus." *Milburn v. State*, 15 S.W.3d 267, 270(Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The decision of what punishment to assess is a "normative process, not intrinsically factbound." *Barrow v. State*, 207 S.W.3d 377, 381 (Tex. Crim. App. 2006) (quotation omitted). The fact-finder's discretion to impose a punishment within the

16

prescribed range is essentially unfettered. *Id.* But, the punishment must be based on the fact-finder's *informed* normative judgment. *Id.*

Here, the only available information regarding the offenses for which the trial court sentenced appellant was appellant's judicial confessions, which did not convey aggravating or mitigating facts about the offenses beyond the statutory elements. The parties did not adduce significant evidence concerning punishment, and the State's improper argument provided an additional aggravating fact in favor of punishment: that the complainant was a father searching for his "trafficked" daughter. And, the trial court adjudicated guilt and assessed punishment in a single proclamation without holding a separate punishment hearing, though the trial court did not prevent appellant from adducing punishment evidence. *See Issa v. State*, 826 S.W.2d 159, 161 (Tex. Crim. App. 1992) (holding that trial court erred by adjudicating guilt and assessing punishment in one proclamation without affording the defendant an opportunity to present punishment phase evidence; reasoning that a trial court must "conduct a second phase to determine punishment," and a defendant is "entitled to a punishment hearing after the adjudication of guilt, and the trial judge must allow the accused the opportunity to present evidence").

The State contends that any error was harmless, however, because "the prosecutor made even more inflammatory arguments without objection by the appellant, such as that the appellant forced the daughter to have oral sex with men for money." We agree with the State that this improper argument based on facts outside the record was particularly inflammatory, yet appellant did not object to it. Thus, any impropriety of the State's earlier argument—referring to the complainant as the father of a runaway trafficked child—was cured by the later reference to appellant forcing a child to perform oral sex on men for money. *See Smith*, 842 S.W.2d at 406.

17

In sum, appellant was not harmed by the improper argument to which he objected. Thus, appellant's third issue is overruled.

## III.  CONCLUSION

Because trial court's judgments erroneously reflect that appellant pleaded "true" to the allegations in the State's motion to adjudicate, we reform the trial court's judgments to add the word "not" before the word "true" under the heading "plea to the motion to adjudicate." We affirm the trial court's judgments as modified.

/s/    Ken Wise
        Justice

Panel consists of Justices Donovan, Wise, and Jewell.
Publish — Tex. R. App. P. 47.2(b).