

**NUMBER 13-18-00360-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**JASON AUVENSHINE,**                                         **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                        **Appellee.**

---

**On appeal from the 214th District Court
of Nueces County, Texas.**

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Longoria**

Appellant Jason Auvenshine was convicted of failing to comply with duties after an accident involving death and intoxication manslaughter with a vehicle, both second-degree felonies. *See* Tex. Transp. Code Ann. § 550.021(c)(1)(A); Tex. Penal Code Ann.

§ 49.08.  By one issue, Auvenshine argues that the trial court abused its discretion in excluding the opinion of his accident reconstruction expert.  We affirm.

## I. BACKGROUND

Most of the details surrounding the incident in question are undisputed on appeal. On March 24, 2017, Anthony Mastropole was celebrating his twentieth birthday party at a condo in Port Aransas with several of his friends, including Brandon Phelps.  Anthony testified that Phelps left to go skateboard in the front yard alone at 10:00 or 11:00 p.m. After two or three minutes, Anthony heard a loud noise, so he rushed to the front yard and saw Phelps unconscious on the sidewalk.  Anthony noticed a white BMW do a U-turn and drive away.

Police officers and firefighters responded to the 911 call that was placed.  Jonathon Gillespie, who worked with the Port Aransas Volunteer Fire Department, testified that a roadblock was placed to redirect traffic away from the scene of the accident.  As he was directing traffic, Gillespie testified that a white BMW approached the roadblock at what appeared to be approximately 50 miles per hour, even though the speed limit on that road is 30 miles per hour.  Gillespie claimed that after the BMW came to an abrupt stop, he asked the driver, Auvenshine, to remove the keys from the ignition and step out of the vehicle.  According to Gillespie, Auvenshine appeared to be intoxicated because his speech was slurred and he was slow to respond to questions.  Auvenshine consented to a blood draw, which showed that he had a .203 blood-alcohol level.

Phelps died from his injuries, and Auvenshine was indicted for failing to comply with duties after an accident involving death, *see* TEX. TRANSP. CODE ANN. § 550.021(a) (explaining that "[t]he operator of a vehicle involved in an accident that results or is

2

reasonably likely to result in injury to or death of a person shall . . . immediately stop the vehicle at the scene of the accident or as close to the scene as possible"), and intoxication manslaughter with a vehicle. *See* TEX. PENAL CODE ANN. § 49.08.

During trial, Auvenshine conceded that he was the driver of the white BMW and that his blood-alcohol level was .203 the night of the accident. However, Auvenshine asserted that "due to Mr. Phelp[s]'s own actions, even a completely sober driver would have been unable to avoid hitting him with a car." Auvenshine called Richard Palacios to testify as an expert in "[a]ccident reconstruction," and the State took him on voir dire outside the presence of the jury. Palacios first opined that, because of the time that elapsed between the accident and the arrest and subsequent blood draw, Auvenshine might not have been intoxicated at the time he struck Phelps. Palacios next opined that Auvenshine could not have collided with Phelps on the sidewalk because of the lack of undercarriage damage on the BMW. Palacios also stated that if Phelps was struck while skateboarding on the sidewalk, he would have expected to see marks on the sidewalk, but there were none. Thus, based on his experience, Palacios believed Phelps was in the road, not the sidewalk, when he was struck by Auvenshine. The State acknowledged that Palacios had "impeccable credentials" as an accident reconstruction expert but asserted that Palacios's opinion was unreliable because he was relying on hard sciences to calculate "angles, trajectories, and vectors" and yet did not provide any calculations or formulas to the trial court to review. The trial court excluded Palacios's testimony as to his opinion on intoxication and the area of impact.

The jury found Auvenshine guilty on both counts. Auvenshine pleaded true to the habitual felony offender enhancement paragraphs and was sentenced to life

imprisonment in the Institutional Division of the Texas Department of Criminal Justice. *See id.* § 12.42(d). This appeal followed.

## II. EXCLUSION OF EXPERT TESTIMONY

### A. Standard of Review and Applicable Law

We review a trial court's ruling on the admission of evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). If we find any error, we must next decide if that error constituted reversible error. *See* TEX. R. APP. P. 44.2; *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017). "[N]onconstitutional error requires reversal only if it affects the substantial rights of the accused." *Proenza v. State*, 555 S.W.3d 389, 398 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). A nonconstitutional error affects the substantial rights of the accused if it had a substantial and injurious effect or influence in determining the verdict. *See Bell v. State*, 566 S.W.3d 398, 408 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

> In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court might also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material to appellant's claim.

*Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). After considering the above factors, we will only reverse if we have a "grave doubt that the result of the trial was free from the substantial effect of the error." *Proenza*, 555 S.W.3d at 398.

On the other hand, for constitutional error, we must reverse unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or the

4

assessed punishment.  *See* TEX. R. APP. P. 44.2(a).  Constitutional error is limited to

"evidence [that] forms such a vital portion of the case that exclusion effectively precludes

the defendant from presenting a defense."  *Potier v. State*, 68 S.W.3d 657, 658 (Tex.

Crim. App. 2002).

## B. Analysis

By one issue, Auvenshine argues that the trial court abused its discretion by

excluding the testimony of his accident reconstruction expert and that this exclusion was

harmful constitutional error.  We conclude that the trial court did not abuse its discretion.

However, even if the trial court abused its discretion in excluding Palacios's testimony,

any such error did not constitute reversible error.  *See* TEX. R. APP. P. 44.2; *Proenza*, 541

S.W.3d at 801.

### 1. No Abuse of Discretion

Auvenshine does not challenge the trial court's exclusion of Palacios's testimony

concerning Auvenshine's intoxication levels at the time of incident.  Instead, Auvenshine

solely argues that the trial court abused its discretion in excluding Palacios's opinions "as

to the area of impact in the road."  During voir dire, Palacios indicated that he would testify

that the lack of visible damage to the undercarriage of the vehicle and lack of tire marks

on the curb, grass, and sidewalk that Auvenshine could not have possibly driven over the

sidewalk when he hit the victim.  This opinion was originally based on photographs of the

vehicle and crime scene.  During a break in the proceedings, he was able to inspect the

vehicle.  He provided the court with measurements as to the vehicle's undercarriage and

bumpers.  However, he was unable to testify to any other measurements or calculations

he utilized to provide a basis for his opinion.  The trial court allowed Palacios to testify as

an expert concerning "how any scene should be investigated," but Palacios was not allowed to opine as to the where the impact occurred in this case.

It was Auvenshine's burden to demonstrate that Palacios's testimony was "based on a reliable scientific foundation." *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011). Palacios referenced multiple formulas that would support his conclusion concerning the impact area but he did not furnish any of them to the trial court. In other words, he seemed to be relying on the hard science aspects of accident reconstruction and yet he failed to provide the scientific foundation for his opinions and conclusions. Given these circumstances, we conclude that the trial court did not abuse its discretion in excluding Palacios's testimony. *See id.*; *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992) (factoring qualifications in a determination of testimony reliability).

Alternatively, even if we had decided that the trial court abused its discretion in excluding Palacios's testimony, we conclude that any such error did not constitute reversible error. *See* TEX. R. APP. P. 44.2; *Proenza*, 541 S.W.3d at 801.

### 2. Any Alleged Error was Non-Constitutional

First, to determine if the alleged error was constitutional, we look to see if the exclusion of Palacios's testimony effectively prevented Auvenshine from presenting a defense. *See Potier*, 68 S.W.3d at 658. According to Auvenshine, his "primary argument" below was to dispute that "his intoxication was the cause of Mr. Phelps's death." *See* TEX. PENAL CODE ANN. § 49.08(a)(2) (providing that a person commits intoxication manslaughter only if the person "is intoxicated and by reason of that intoxication causes the death of another by accident or mistake"). During his closing argument, Auvenshine asserted that "even a driver who had consumed no alcohol would have been likely to

6

have been unable to avoid the same result due to [Phelps's] own action." More specifically, Auvenshine alleged that Phelps could not see properly because he was not wearing his corrective glasses, Phelps was potentially distracted by using a cell phone, and most importantly, Phelps was likely in the middle of the road when he was struck by Auvenshine. Thus, Auvenshine argued that his intoxication did not cause Phelps's death because even a sober driver would have struck and killed him.

The State called multiple witnesses to testify concerning the area of impact, among other things. All of the witnesses, including several officers and a State Trooper, claimed that it was difficult to assess the area of impact in this case. The State argued it was difficult to pinpoint where Phelps was when he was struck because Auvenshine took zero evasive maneuvers and did not even apply the brakes before hitting Phelps. The State indicated its belief that Phelps was on the sidewalk when Auvenshine struck him, based on the location of his blood and his body. However, during closing arguments, the State proposed that the exact location was not important because, ultimately, Auvenshine was either "too drunk to try and go around the boy, if he was on the road; or he was too drunk to stay on the road and went up on the sidewalk." In other words, the State argued that even if Phelps was on the road, Auvenshine's intoxication still caused Phelps's death.

Having reviewed the record, we conclude that Auvenshine was not "effectively preclude[d]" from making a defense. *Potier*, 68 S.W.3d at 658. Palacios would have opined, if his testimony were not excluded, that Phelps was likely in the road when he was struck by Auvenshine. Palacios's testimony was certainly relevant, but the exclusion of his testimony did not "significantly undermine fundamental elements of the accused's defense." *Id.* at 666. On appeal, Auvenshine acknowledges that even without Palacios's

7

testimony concerning Phelps being on the road, he was able to "resort[] to other facts in the trial to argue the point." Auvenshine may not have presented his defensive theory concerning the impact area to the extent or in the form he would have preferred, but the exclusion of Palacios's testimony did not preclude Auvenshine from arguing that his intoxication did not cause Phelps's death for exactly that reason. *Id.* Thus, any alleged error was non-constitutional, and we will only reverse if the alleged error had a substantial and injurious effect or influence in determining the verdict. *See Bell*, 566 S.W.3d at 408.

### 3. Any Alleged Error Did Not Affect Auvenshine's Substantial Rights

The evidence against Auvenshine was overwhelming. Even though he initially denied any involvement in the accident and denied drinking any alcohol, Auvenshine conceded at trial that his blood-alcohol level was about .203 on the night of the incident and he admitted that he was the driver of the white BMW that struck Phelps. His front right windshield was completely shattered and contained human tissue deeply embedded in the cracks, even though Auvenshine originally tried to explain that the cracked windshield was caused by a dump truck. Cell phone records introduced by the State showed that Auvenshine sent and received several text messages around the estimated time of the accident. The State asserted it was hard to gauge Phelps's exact location when he was struck because Auvenshine did not apply the brakes or employ any evasive maneuvers before hitting Phelps, likely because of how intoxicated Auvenshine was.

Despite all of this evidence, Auvenshine's main defensive argument was that even a sober driver would have hit and killed Phelps, mainly because Phelps was in the middle of the road performing skateboard tricks. The State reiterated its belief that Phelps was likely on the sidewalk; however, the State argued that whether Phelps was in the road or

8

on the sidewalk, Auvenshine's intoxication was the cause of Phelps's death because Auvenshine was either too drunk to take evasive maneuvers to avoid Phelps or Auvenshine was so drunk that he hit Phelps while on the sidewalk. Additionally, the jury charge contained the following instruction on concurrent causes:

> In addition, it is not necessary that the intoxicated person's conduct be the sole cause of death of another. A person who is intoxicated causes the death of another by reason of that intoxication if the death would not have occurred but for the person's intoxication operating either alone or concurrently with another cause, unless the concurrent cause clearly sufficient to produce the resulting death and intoxication of the person was clearly insufficient.

*See* TEX. PENAL CODE ANN. § 6.04(a). The jury heard both the State's and Auvenshine's theories about the impact area. The jury could have easily concluded that, regardless of whether Phelps was in the street or on the sidewalk, his death would have not occurred but for Auvenshine's intoxication.

When we look at the testimony adduced at trial, the nature of the evidence, the State's theories, the defensive theories, and the jury instruction, we have a fair assurance that any alleged error "did not influence the jury, or influenced the jury only slightly." *Proenza*, 555 S.W.3d at 398; *see Morales*, 32 S.W.3d at 867. Therefore, Auvenshine's substantial rights were not affected, and any alleged error was harmless. *See* TEX. R. APP. P. 44.2; *Proenza*, 555 S.W.3d at 398. We overrule Auvenshine's sole issue.

### III. CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA<br>
Justice

9

Do not publish.
Tex. R. App. P. 47.2(b).

Delivered and filed the
10th day of October, 2019.