

# NUMBER 13-19-00287-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GEORGE LOUIS JONES,          Appellant,

v.

THE STATE OF TEXAS,          Appellee.

**On appeal from the 54th District Court
of McLennan County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Longoria and Perkes
Memorandum Opinion by Justice Longoria**

Appellant George Louis Jones was convicted of continuous sexual abuse of a child, a first-degree felony; sexual assault of a child, a second-degree felony; and indecency with a child by contact, a first-degree felony. *See* TEX. PENAL CODE ANN.

§§ 21.02, 22.021, 21.11(a)(1). By one issue on appeal, Jones argues that the trial court erred by admitting extraneous sexual assault evidence. We affirm.

## I. Background[1]

In December 2017, Jones was charged in a three-count indictment, alleging that Jones committed: continuous sexual assault of his nieces C.B. and S.B.[2] (count one), sexual assault of C.B. (count two), and indecency with C.B. by contact (count three). In March 2019, Jones's jury trial began.

Evidence at trial established that C.B. and S.B. are siblings. At the time of trial, C.B. and S.B. were sixteen and fourteen, respectively; at the time of the alleged offenses, they were approximately fourteen and twelve, respectively. According to C.B., she and S.B. lived with their mother in Hewitt, Texas. However, on the weekends, they would frequently spend the night at the house of K.J., their grandmother, in Robinson, Texas, so they could go to church together the next day. Jones is the son of, and lived with, K.J. While C.B. and S.B. stayed at K.J.'s house, C.B. testified that Jones would put his hands on her thighs, go under her shorts, and put his finger in her vagina. Additionally, she asserted that Jones would "pull my vagina to his dick, but with our clothes on. And he would rub my boobs inside my bra." C.B. testified that Jones would put her on his lap and that she could feel his penis. This occurred on numerous occasions over the next two years. S.B. testified that on one occasion, when "nobody else was home, [Jones] was

---

[1] This case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] To protect the identity of the child complainants, we will refer to their family members and friends using aliases. *See* TEX. R. APP. P. 9.8.

laying on the floor and he made me sit on his private part and made me rub my body on his front private part."

Jones, testifying on his own behalf, denied the allegations. He asserted that he was a youth leader with his church. He claimed that one day, he found C.B.'s phone unlocked and discovered nude photographs that C.B. had sent to her boyfriend. Jones contacted C.B.'s parents, but then he got into a heated argument with C.B. about the photos. Jones argued that the sexual allegations against him were fabricated as part of C.B.'s mother's plan to "get back" at him. After Jones discovered the nude photos on C.B.'s phone, C.B. and S.B. and their mother were kicked out of Jones's mother's house.

After the defense rested, the State informed the court, outside of the presence of the jury, of its intention to call C.B.'s friend J.G. as a rebuttal witness. The State proposed that J.G.'s testimony was admissible to rebut Jones's defensive theory—i.e., that the girls had a motive to lie because they and their mother were kicked out of his mother's house and thus allegedly wanted to "get back with" Jones. The State also averred that J.G. was present when many of the offenses took place and that the way Jones touched J.G. was "extremely similar" to the way he touched C.B. and S.B. The court listened to J.G.'s testimony outside the jury's presence to determine if her testimony would be admissible.

J.G. testified, outside the presence of the jury, that she was close friends with C.B. and that she would spend the night at K.J.'s house along with C.B. and S.B. to attend church together. According to J.G., Jones did things that made her uncomfortable, like "pick us up, sit us on top of him." When this would happen, she could feel Jones's penis. The State reiterated that J.G.'s testimony was admissible to rebut the defensive theory that C.B. and S.B. were fabricating the allegations at their mother's request. The State

3

also argued that J.G. had no stake in the matter because she was not a family member. Furthermore, the State claimed that her testimony could be admitted for "identification M.O." because the abuse allegedly suffered by J.G. was extremely similar to C.B.'s and S.B.'s abuse. Lastly, the State argued that J.G.'s testimony was admissible to directly rebut Jones's assertion that he never did anything inappropriate with J.G.

Jones argued that J.G.'s testimony was not relevant to whether C.B. and S.B. were fabricating and his actions as described by J.G. are not sufficiently similar to the charged conduct to show modus operandi. Jones additionally claimed that the probative value of J.G.'s testimony was substantially outweighed by the danger of unfair prejudice. The State responded by arguing that J.G.'s testimony was admissible under article 38.37 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37. The court allowed J.G.'s testimony.

The jury found Jones guilty on all three counts and assessed punishment at thirty years', ten years', and five years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice on the respective counts. This appeal followed

## II. EXTRANEOUS OFFENSE EVIDENCE

In his sole issue, Jones argues that the trial court erred in admitting J.G.'s testimony for the purpose of rebutting the theory of fabrication because J.G.'s allegation of abuse was connected to the complainants' allegations and J.G. could have had the same motive to lie as the complainants.

### A. Standard of Review & Applicable Law

We review the admission of extraneous offense evidence for an abuse of discretion. *See De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). "As

4

long as the trial court's ruling is within the 'zone of reasonable disagreement,' there is no abuse of discretion, and the trial court's ruling will be upheld." *Id*. at 344. We must uphold the judgment "if the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made." *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004).

If we find any error, then we must decide if that error constituted reversible error. *See* Tex. R. App. P. 44.2; *Proenza v. State*, 541 S.W.3d 786, 801 (Tex. Crim. App. 2017). "[N]onconstitutional error requires reversal only if it affects the substantial rights of the accused." *Proenza v. State*, 555 S.W.3d 389, 398 (Tex. App.—Corpus Christi–Edinburg 2018, no pet.). A nonconstitutional error affects the substantial rights of the accused if it had a substantial and injurious effect or influence in determining the verdict. *See Bell v. State*, 566 S.W.3d 398, 408 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

> In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court might also consider the jury instruction given by the trial judge, the State's theory and any defensive theories, closing arguments and even voir dire, if material to appellant's claim.

*Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). After considering the above factors, we will only reverse if we have a "grave doubt that the result of the trial was free from the substantial effect of the error." *Proenza*, 555 S.W.3d at 398.

**B. Analysis**

Jones argues that "given the relationship between J.G. and the two named victims, it is possible that she could share their motivation to fabricate a charge." The State argues that extraneous offense evidence is admissible to rebut a defensive theory of fabrication.

Even if we assume, without deciding, that it was an abuse of discretion to admit J.G.'s testimony, Jones has failed to demonstrate that such error constituted reversible error. *See* TEX. R. APP. P. 44.2. Even without J.G.'s testimony, there was overwhelming evidence to convict Jones based on the testimony of C.B and S.B., in addition to the forensic interviews and medical examinations. *See Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (holding that the testimony of a child communicating to the jury that a touching occurred on a part of the body within the definition of the statute is sufficient evidence to support the conviction). Jones's substantial rights were not affected by the admission of J.G.'s testimony. *See id.* We overrule Jones's sole issue.

## III. CONCLUSION

We affirm the trial court's judgment.

NORA L. LONGORIA,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
10th day of December, 2020.