**Affirmed and Memorandum Opinion filed August 31, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-22-00637-CR

---

### ROY SHERES, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 183rd District Court
Harris County, Texas
Trial Court Cause No. 1652418**

---

### MEMORANDUM OPINION

Appellant Roy Sheres appeals the revocation of his community supervision, contending the trial court committed reversible error by excluding him from the hearing and denying him the opportunity to testify in violation of the Sixth Amendment Confrontation Clause. We affirm.

### BACKGROUND

On September 2, 2020, Appellant entered a guilty plea for the second degree

felony offense of aggravated assault with a deadly weapon.[1]   The trial court deferred an adjudication of guilt and placed Appellant under community supervision for five years.   His deferred adjudication included many standard conditions, including the requirements (1) not to commit any other offenses, (2) not to use, possess, or consume an illegal drug, (3) to report to the community supervision officer, and (4) to have suitable employment.  On January 3, 2022, the trial court signed the State's motion to adjudicate Appellant's guilt, alleging that Appellant violated the terms and conditions of his community supervision when he (1) committed the offenses of terroristic threat and retaliation, (2) used, possessed, or consumed an illegal drug, (3) failed to report as directed to the community supervision officer seven different times, and (4) failed to maintain employment since September 2020.

The trial court held a revocation hearing on August 4, 2022.  The State first presented testimony from Ginea Pride, who is the court liaison officer for the Harris County Community Supervision and Corrections Department.  Regarding Appellant's violation of his community supervision, Pride testified that he tested positive for cocaine in April 2021, he "failed to provide verification or maintain employment beginning in September of 2020 until" the motion for adjudication was filed, he failed to report to his community supervision officer seven times, and he was arrested for the offenses of terroristic threat and retaliation on December 26, 2021.

Regarding the alleged offenses, the State presented Houston Police Officer O'Connor's testimony.  He was dispatched to Complainant's apartment three times

---

[1] Appellant also (1) pleaded true to two enhancement (habitual offender) paragraphs in the indictment, which alleged two prior felony convictions, and (2) initialed admonishments informing him that upon a guilty finding for the charged offense of aggravated assault with a deadly weapon, his punishment range as a habitual offender will be "for any term of not more than 99 years or less than 25 years."

during the night on December 26, 2021. The first time O'Connor and his partner came to the apartment, they encountered Appellant and Complainant having a verbal argument. Complainant and Appellant were in a dating relationship. O'Connor took Appellant "to a family member's apartment, and at that time assumed that the situation had been handled." O'Connor again was dispatched to Complainant's apartment at 1:20 a.m. He testified he spoke to Complainant, who had stated that Appellant had "returned to the apartment and had pushed his way into the apartment and threatened to kill her." Appellant was no longer there.

O'Connor was dispatched to the scene a third time around 2:30 a.m. When O'Connor arrived, he saw Appellant "was seated at the top of the stairs outside of the Complainant's apartment." O'Connor testified that "because of the previous encounter knowing that he had threatened her, we did detain Mr. Sheres." O'Connor testified that Appellant at first was cooperative but then was uncooperative for the remainder of his detainment and later arrest. At that point in the hearing, Appellant made an unintelligible outburst and the following exchange occurred:

> THE COURT: Mr. Sheres.
>
> THE DEFENDANT: Don't want to say nothing in my defense.
>
> THE COURT: Mr. Sheres, I'm instructing you to remain silent.
>
> THE DEFENDANT: You fired.
>
> THE COURT: Mr. Sheres, you're disrupting the Court. Are you going to remain silent?
>
> THE DEFENDANT: You fired. Can you take me back?
>
> THE COURT: Are you —
>
> THE DEFENDANT: No. I'm ready to go back.
>
> THE COURT: All right. Court has determined that Mr. Sheres is voluntarily abstained [sic] himself from these proceedings and will be taken back. We'll continue with the proceeding in his absence.

3

THE DEFENDANT: You don't want to say nothing in my Goddamned defense, you old-assed cracker.

(Defendant excused to holding cell)

THE COURT: You may proceed.

O'Connor resumed his testimony, describing Appellant's uncooperative behavior. He also testified that Appellant threatened to kill Complainant and another officer on the scene, stating:

> So, initially, he made many statements towards the Complainant, Ms. Denise, saying that he would kill her, that he swore on God and his daughter that he would kill her, that he would burn down her apartment, and then, he began to make threats toward another officer on scene, Officer Silva, claiming that he's dead. And during the transport, he continued to make many threats to me and the officer — and Officer England and our families.

O'Connor further testified that Appellant during his transport in the police vehicle made "many unsolicited threats toward me and the officer with me, Officer England, saying that he would find us, find our families and kill them. Saying that he would take our names from the police report and then find our families through Facebook and harm them. Stating that he's done it before. He will do it again." O'Connor stated that he "absolutely" took Appellant's threats seriously.

After O'Connor's testimony, Appellant's trial counsel moved "to abate these proceedings until Mr. Sheres can be fixed to properly behave in the Court." The trial court denied the motion and stated: "I believe that the Defendant voluntarily absented himself from these proceedings and is able — we are able to proceed in his absence for the purposes of the Motion to Adjudicate. He was here at the initial proceedings."

Houston Police Officer Silva then testified that he was dispatched to Complainant's apartment around 2:30 a.m. When Silva arrived at the scene, he observed O'Connor talking to Complainant while England was escorting Appellant

4

to the police car. Silva testified that Appellant was uncooperative during his detention and untruthfully claimed that Silva and England were assaulting him. As Silva and England tried to place Appellant in the police car, Appellant "continued to shout and threaten [Silva] and the Complainant."

The trial court also admitted the recordings from O'Connor's and Silva's body cameras. The recordings support the officers' testimonies that Appellant threatened Complainant as well as O'Connor, England, and Silva. The State and Appellant's counsel made their closing statements, and the trial court found that the State "proved by a preponderance of the evidence all of the paragraphs contained in the Motion to Adjudicate in this case." The trial court adjudicated Appellant guilty of the second degree felony offense of aggravated assault with a deadly weapon, revoked his probation, and sentenced him to 25 years' confinement. The trial court signed a judgment adjudicating guilt in accordance with its pronouncements on August 4, 2022.

Appellant filed a motion for new trial on August 18, 2022. Six days later, Appellant filed a first amended motion for new trial, in which he asserted, among other things, that "the evidence was insufficient. New evidence material to the Defense may be/may have been discovered. The trial court committed errors. The Defendant was deprived of a fair and impartial trial. The State did not prove each and every element of the offense beyond a reasonable doubt." The motion was overruled by operation of law. Appellant filed a timely appeal.

**ANALYSIS**

In one issue, Appellant contends that the trial court erred by (1) excluding Appellant from his revocation hearing; (2) "not allowing him the opportunity to re-join the proceedings"; and (3) concluding that he voluntarily absented himself from the hearing. Appellant contends he preserved his Sixth Amendment Confrontation

5

Clause argument when his trial counsel (1) asked the trial court to abate the proceedings until Appellant "can be fixed to properly behave in the Court"; and (2) objected at the end of the hearing after adjudication of guilt to the trial court's statement that Appellant voluntarily absented himself when he asked to leave the courtroom.

The State counters that Appellant failed to preserve his Confrontation Clause complaint because his counsel (1) "did not object to Appellant leaving the courtroom or continuing on with the proceeding" after Appellant asked to leave during O'Connor's testimony; (2) waited until O'Connor finished testifying to ask the court to abate the hearing; (3) objected after Appellant had been adjudicated guilty; and (4) in any of these instances never referred to or invoked the Confrontation Clause. The State also asserts that the trial court did not err in proceeding with the revocation hearing outside of Appellant's presence because (1) the Confrontation Clause does not apply to probation revocation proceedings;[2] (2) Texas Code of Criminal Procedure article 33.03 only applies to trial; and (3) Appellant absented himself from the hearing.

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI; *Illinois v. Allen*, 397 U.S. 337, 338 (1970). The Fourteenth Amendment makes the guarantees of this clause obligatory upon the States. *Allen*, 397 U.S. at 338. "One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every

---

[2] We note that, contrary to the State's assertion, this court already held that the constitutional guarantees of confrontation and due process of law apply to revocation hearings. *See Hughes v. State*, 651 S.W.3d 461, 467-68 (Tex. App.—Houston [14th Dist.] 2022, pet. granted).

stage of his trial." *Id.*; *see also Garcia v. State*, 149 S.W.3d 135, 140 (Tex. Crim. App. 2004).

Assuming *arguendo* that the trial court violated Appellant's right to be present in the courtroom during his revocation hearing under the Confrontation Clause of the Sixth Amendment and that such error is preserved for appellate review, we cannot conclude that the alleged error was harmful.

A trial court's violation of a defendant's Sixth Amendment right to be present at his revocation hearing constitutes constitutional error. *See Hughes v. State*, 651 S.W.3d 461, 470 (Tex. App.—Houston [14th Dist.] 2022, pet. granted); *see also Kessel v. State*, 161 S.W.3d 40, 48 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd). Constitutional error is harmful unless a reviewing court determines beyond a reasonable doubt that the error did not contribute to the judgment. *See* Tex. R. App. P. 44.2(a); *Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020). Therefore, a judgment adjudicating a defendant's guilt must be reversed unless we determine beyond a reasonable doubt that the trial court's error did not contribute to the judgment. *See* Tex. R. App. P. 44.2(a); *Garcia*, 149 S.W.3d at 146; *Hughes*, 651 S.W.3d at 470.

Appellant argues that he "was harmed by not being afforded the opportunity to testify in his own defense" when he "clearly had a lot to say about the events that transpired with [Complainant] and Officers O'Connor and Silva, but the trial court did not even inquire as to whether he wanted to offer testimony in his own defense when his outburst clearly showed that he did."

Contrary to Appellant's assertion, the record before us does not support a finding of harmful error. First, it is unclear how Appellant's outburst "clearly showed" he wanted to testify in his own defense, nor does Appellant provide an explanation for his contention. Second, Appellant's assertion that he wanted to

7

testify in his own defense is belied and negated by the fact that he insisted on leaving the hearing; if Appellant "clearly had a lot to say" he would not have twice requested to leave.

Third, Appellant does not state what he would have testified to with respect to "the events that transpired with [Complainant] and Officers O'Connor and Silva" or how such testimony would have helped him in this case, especially when O'Connor's and Silva's body camera recordings confirmed the officers' testimony. O'Connor and Silva testified that, at the scene, Appellant not only threatened to kill Complainant but also threatened Silva. While Appellant was in the police car and during his transport, he continued to threaten Complainant, the officers, and the officers' families. The body camera recordings confirm that (1) at the scene, Appellant threatened to kill Complainant several times; (2) Appellant continued to threaten to kill Complainant and burn down her home while sitting in the police car and then during the car ride; (3) at the scene, Appellant threatened to kill Silva and harm the officers; and (4) Appellant continued to threaten O'Connor, England, and their families. The officers' testimony together with the body camera recordings established that Appellant committed the offenses of "terroristic threat family/household"[3] and retaliation[4] as alleged in the motion to adjudicate, and

---

[3] A person commits the offense of making a terroristic threat against a member of his family or household if he "threatens to commit any offense involving violence . . . with intent to . . . place [the family or household member] in fear of imminent serious bodily injury." *See* Tex. Penal Code Ann. § 22.07; *see also Argudo-Rodriguez v. State*, No. 03-09-00028-CR, 2010 WL 1930092, at *4 (Tex. App.—Austin May 14, 2010, no pet.) (mem. op., not designated for publication). "By making an express threat to 'kill,' a reasonable fact finder could infer that appellant had formed the intent to place the [person] in fear of imminent serious bodily injury." *Willbanks v. State*, No. 14-22-00109-CR, 2023 WL 3750232, at *2 (Tex. App.—Houston [14th Dist.] June 1, 2023, no pet. h.) (mem. op., not designated for publication) (citing *Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009)).

[4] A person commits the offense of retaliation if he intentionally or knowingly harms or threatens to harm another by an unlawful act in retaliation for the service of another as a public servant, witness, prospective witness, or informant. *See* Tex. Penal Code Ann. § 36.06(a).

Appellant does not state what evidence his attorney could have presented through Appellant's testimony or otherwise that could have controverted the officers' testimony and body camera recordings.

Fourth, Appellant was present at the time Pride testified that Appellant had violated three other conditions of his community supervision. Not only does Appellant not challenge the veracity of Pride's testimony, but Appellant acknowledges in his brief that he tested positive for cocaine, he failed to maintain and/or provide proof of employment since September 2020, and he failed to report to his probation officer numerous times. The evidence therefore shows Appellant violated the conditions of his community supervision as alleged in the motion to adjudicate.[5]

Based on the record before us, we cannot conclude Appellant's partial absence from the proceeding under these circumstances could have harmed him. While Appellant received 25 years of confinement, his status as a repeat felony offender meant 25 years was the minimum the trial court could assess. *See* Tex. Penal Code Ann. § 12.42(d) ("on conviction the defendant shall be punished by imprisonment in the Texas Department of Criminal Justice for life, or for any term of not more than 99 years or less than 25 years").

Accordingly, we conclude beyond a reasonable doubt that the trial court's alleged error did not contribute to the judgment.

## CONCLUSION

We affirm the trial court's judgment.

---

[5] To revoke probation, the State must prove a violation of a condition of probation by a preponderance of the evidence. *Bell v. State*, 566 S.W.3d 398, 401 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Evidence is sufficient to revoke probation if there is more than a scintilla of evidence. *Id*. Proof of a single violation is sufficient to support a revocation. *Garcia v. State*, 387 S.W.3d 20, 26 (Tex. Crim. App. 2012).

/s/ Meagan Hassan
Justice


Panel consists of Justices Bourliot, Hassan, and Poissant.

Do Not Publish — Tex. R. App. P. 47.2(b).